# STATE OF MICHIGAN

# COURT OF APPEALS

D'ALESSANDRO CONTRACTING GROUP,
LLC, and SAFECO INSURANCE COMPANY
OF AMERICA,

        Plaintiffs-Appellees/Cross-
        Appellants,

v

JEFFREY WRIGHT, GENESEE COUNTY
DRAIN COMMISSIONER, and DIVISION OF
WATER & WASTE SERVICES,

        Defendants-Appellants/Cross-
        Appellees.

FOR PUBLICATION
November 13, 2014
9:20 a.m.

No. 317201
Genesee Circuit Court
LC No. 10-095065-CK

---

Before: WHITBECK, P.J., and FITZGERALD and MURRAY, JJ.

MURRAY, J.

At issue in this case is the applicability and potential waiver of the work-product privilege in the context of an indemnification relationship. It comes to us on defendants' interlocutory appeal of the Genesee Circuit Court's order compelling defendants' production of their investigation report related to a sewer system construction project gone awry. Defendants, Jeffrey Wright, Genesee County Drain Commissioner, and Division of Water and Waste Services, maintain that the circuit court incorrectly determined that their sharing that report with their indemnitor constituted a waiver of the work-product privilege. Plaintiffs, D'Alessandro Contracting Group, LLC ("DCG"), and its surety Safeco Insurance Company of America, cross-appeal this same order, arguing that defendants lacked any privilege in the first instance.

We hold that although the circuit court correctly ruled that the report was prepared in anticipation of litigation, the court otherwise erred in two respects. First, the court erred in ruling that the work-product privilege applied to the report in its entirety without conducting an in camera review to determine what parts of the report, if any, are not subject to that privilege. Second, the circuit court erred in finding defendants "waived any privilege" to the report. Accordingly, we remand for proceedings consistent with this opinion, including an in camera review of the report to determine the scope of the work-product doctrine's application and for resolution of whether defendants disclosed the report to Safeco, thereby waiving any work-product protection.

## I. BACKGROUND

The pertinent facts of this case are straightforward. They trace back to June 2009, when the parties discovered cracking in some of the pipes installed by DCG during a sewer construction project for Genesee County. Fault was soon at issue, and so, the following month, defendants hired an independent engineering firm—Hubbel, Roth, and Clark (HRC)—to investigate and determine the cause of the pipe cracking. Of particular concern was whether defective design or defective installation could be the culprit. On September 8, 2009, defendants received a report from HRC and in turn shared it with the successor to the firm responsible for the project's design, Architecture, Engineering, Consulting, Operations, and Maintenance (AECOM), which had agreed to indemnify defendants for any losses arising out of project design errors. The HRC report—which defendants did not provide to DCG despite their alleged promise to do so—is not part of the record on appeal.

Over the ensuing year, the parties attempted to resolve their dispute, but nevertheless remained at an impasse. Plaintiffs then commenced this lawsuit on December 14, 2010, alleging breach of contract. Defendants counterclaimed, also alleging breach of contract as well as an action on the bonds. To protect their confidential communications, including the HRC report which defendants had designated as privileged, defendants and AECOM entered into a joint defense agreement. This effort hit a stumbling block, however, as AECOM had already inadvertently disclosed the HRC report to plaintiffs during prior discovery.

Upon obtaining the HRC report, plaintiffs notified defendants of the disclosure[1] and subsequently moved for a determination that defendants had waived the work-product privilege by disclosing the report to AECOM, a potential adversary in future proceedings, as well as to Safeco, by failing to provide the report to plaintiffs as promised, and by filing a counterclaim. Defendants responded that the report was prepared in anticipation of litigation and that no waiver resulted from the disclosure to AECOM because of their common interest and because MCR 2.302(B)(3) otherwise protects work product shared with an indemnitor absent plaintiffs' showing of substantial need and undue hardship.

Although the circuit court agreed with defendants that the HRC report was prepared in anticipation of litigation and that plaintiffs had failed to show a substantial need for it given that a representative from DCG was present at the work site during HRC's inspection, the court ultimately ruled in plaintiffs' favor. The court held that defendants' disclosure of the report to AECOM constituted a waiver because AECOM could be a "potential adversary," who, although not named as a defendant, had "participated in the design of this project. And the Drain Commission could well decide later on to make them responsible." An order was entered reflecting this ruling on March 18, 2013. On reconsideration, the circuit court summarily addressed defendants' common-interest argument, determining that palpable error was nonexistent. This appeal ensued.

## II. ANALYSIS

---

[1] See MCR 2.302(B)(7).

As they argued below, defendants assert on appeal that their common interest with AECOM as well as the plain language of MCR 2.302(B)(3)(a) precluded the circuit court's holding that their disclosure of the HRC report to AECOM waived the work-product privilege. Plaintiffs argue in their cross-appeal that this Court need not even reach the issue of waiver since the report is not privileged in the first place. We hold that although the report was prepared in anticipation of litigation, the circuit court erred in concluding the report was subject to the privilege in its totality without conducting an in camera review. The circuit court additionally erred in concluding that defendants "waived any privilege" to the report. As discussed below, remand is appropriate (1) for an in camera review to determine the scope of the work-product privilege's applicability, (2) to resolve whether the report was disclosed to Safeco, and (3) to determine whether a disclosure to Safeco resulted in a waiver of the privilege.

## A. STANDARD OF REVIEW

Generally, we review the grant or denial of a discovery motion for an abuse of discretion. *Linebaugh v Sheraton Michigan Corp*, 198 Mich App 335, 343; 497 NW2d 585 (1993). However, whether a party may assert the work-product privilege and whether a party has waived that privilege are questions of law that we review de novo. *Augustine v Allstate Ins Co*, 292 Mich App 408, 419; 807 NW2d 77 (2011). "Once we determine whether the privilege is applicable, this Court then reviews whether the trial court's order was an abuse of discretion." *Id*. A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). A court's factual findings underlying its determination of the existence and waiver of the work-product privilege are reviewed for clear error. *Messenger v Ingham Co Prosecutor*, 232 Mich App 633, 637; 591 NW2d 393 (1998). To the extent defendants' appeal requires interpretation of a court rule or otherwise implicates the circuit court's ruling on reconsideration, our review is de novo and for an abuse of discretion, respectively. *In re FG*, 264 Mich App 413, 417; 691 NW2d 465 (2004); *Churchman v Rickerson*, 240 Mich App 223, 233; 611 NW2d 333 (2000).

As an initial matter, plaintiffs argue on cross-appeal that the HRC report is not privileged work product and that the circuit court erred in "unilaterally" deciding otherwise. However, while defendants argued below that the report was prepared in anticipation of litigation, plaintiffs declined to reply and presented none of the arguments below which they now assert on cross-appeal. Because of this, defendants assert plaintiffs have waived their argument. But "[w]aiver is the intentional relinquishment or abandonment of a known right," *In re Contempt of Dorsey*, ___ Mich App ___, ___; ___ NW2d ___ (2014); slip op at 10 (citation and quotation marks omitted), and plaintiffs *never* conceded the preliminary issue they present on cross-appeal. Rather, they focused on waiver of the work-product privilege, merely assuming its existence arguendo. This deficiency therefore renders plaintiffs' arguments on cross-appeal unpreserved, not waived. *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386-387; 803 NW2d 698 (2010).

We may review an unpreserved issue such as this one where, among other things, "the issue involves a question of law and the facts necessary for its resolution have been presented." *Id*. at 387. These circumstances are present here, and therefore our review of plaintiffs' cross-appeal is for plain error affecting substantial rights. *Wolford v Duncan*, 279 Mich App 631, 637; 760 NW2d 253 (2008).

## B. APPLICABILITY OF THE WORK-PRODUCT PRIVILEGE

As stated before, plaintiffs' cross-appeal comes down to whether defendants may assert the work-product privilege at all. The touchstone of the work-product doctrine is whether notes, working papers, memoranda or similar materials were prepared in anticipation of litigation. *Messenger*, 232 Mich App at 637-638, quoting *Black's Law Dictionary* (6th ed), citing Fed R Civ P 26(b)(3). If they were, this work product is "cloaked with a qualified immunity without regard to whether [it was] prepared by an attorney or by some other person and whether such other person was engaged by an attorney." *Leibel v Gen Motors Corp*, 250 Mich App 229, 245; 646 NW2d 179 (2002) (citation omitted). Work product is prepared in anticipation of litigation "if the prospect of litigation is identifiable, either because of the facts of the situation or the fact that the claims have already arisen." *Great Lakes Concrete Pole Corp v Eash*, 148 Mich App 649, 654 n 2; 385 NW2d 296 (1986), quoting *United States v Davis*, 636 F2d 1028 (CA 5, 1981). Thus, the doctrine "does not require that an attorney prepare the disputed document only after a specific claim has arisen." *Leibel*, 250 Mich App at 246 (citation omitted). The doctrine does require, however, that the materials subject to the privilege pertain to more than just "objective facts." *Great Lakes*, 148 Mich App at 657; see also *Ostoin v Waterford Twp Police Dep't*, 189 Mich App 334, 337; 471 NW2d 666 (1991).

Along these lines, this Court has previously instructed that with regard to expert reports, although the facts and expert opinion they contain are not work product per se,

> [t]he arrangement of those facts and opinions in a report, made directly responsive to the inquiries of an attorney, is, however, work product; a disclosure of the report itself would betray those thoughts, mental impressions, formulations of litigation strategy, and legal theories of the attorney that are protected by the work-product [privilege]. To hold that a party to a litigation could attain copies of those reports by merely making a demand for production without more would have the practical effect of chilling the ability of an attorney and his retained expert witness to freely communicate in writing. See also 2 Martin, Dean & Webster, Michigan Court Rules Practice, pp 173, 177. [*Franzel v Kerr Mfg Co*, 234 Mich App 600, 621-622; 600 NW2d 66 (1999) (brackets in original), quoting *Backiel v Sinai Hosp of Detroit*, 163 Mich App 774, 778; 415 NW2d 15 (1987).]

It is clear that the HRC report was prepared in anticipation of litigation. As the circuit court found, it is undisputed that both sides were already aware of the underlying factual problem, i.e., that the pipes had cracked. Left to be determined was the cause of those cracks. It is for this reason that defendants' counsel retained HRC. Even the HRC consulting request form expressly states that the HRC report was to "discuss [the] reasons for failure," "provide recommendations," "determine the cost of corrections," and "to develop a design review . . . *in case this goes to court*." (Emphasis added.)

That the prospect of litigation was readily identifiable and not a mere hypothetical preventative measure is equally clear. Indeed, not only had litigation previously arisen between the parties regarding other aspects of the project, but also one of defendants' representatives averred that during their prior negotiations the parties had discussed potential litigation

concerning the subject of this lawsuit. The circuit court correctly held that the HRC report was prepared for this very purpose.[2]

While in many cases, this conclusion may well be decisive as to the applicability of the work-product privilege, we are not prepared to make that ruling on the record before us. As noted, the report is not part of the record on appeal, and the circuit court did not review the report in any way before making its determination. According to the parties, the report contains no indication that it was intended as exclusive work product, and although the report purportedly opines on the causes of the pipe cracking, it is possible the report may contain objective facts to which plaintiffs would otherwise be entitled. Even the circuit court found when ruling on the issue of substantial need that "everybody's got the same facts here" based on the presence of plaintiffs' representative at HRC's investigation. Without reviewing the report, however, neither we nor the circuit court are able to make this determination conclusively. See *Koster v June's Trucking, Inc*, 244 Mich App 162, 164; 625 NW2d 82 (2000) (holding that the trial court erred in failing to conduct an in camera inspection where the trial court ordered the defendants' entire claim file be turned over without determining whether the work-product privilege protected the documents); *Ostoin*, 189 Mich App at 339 ("The trial court abused its discretion by categorically denying discovery of the files without first conducting an in camera inspection to determine whether they contain relevant, nonprivileged material subject to discovery by plaintiff"); see also *United States v Deloitte LLP*, 391 US App DC 318, 328; 610 F3d 129 (2010) (the court "will therefore remand this question to the district court for the purpose of independently assessing whether the document was entirely work product, or whether a partial or redacted version of the document could have been disclosed."). Accordingly, the circuit court on remand should review the report in camera and determine which parts, if any, are not subject to work-product protection.[3]

---

[2] Defendants' argument that MCR 2.302(B)(3)(a) triggers the work-product privilege is incorrect and does not otherwise support our conclusion. Indeed, that rule *recognizes* the existing work-product privilege and operates to limit an opposing party's access to work product absent a showing of substantial need and undue hardship. See *Messenger*, 232 Mich App at 639. That the report could fall within the ambit of this court rule would result from the fact that the work-product privilege applies in the first place, which is the central issue of plaintiffs' cross-appeal.

[3] In reaching our conclusion, we do not imply that an in camera review is always necessary before ruling on the applicability of the work-product privilege, but only that this review is necessary here. Nor are plaintiffs correct that defendants must have intended to keep the report "absolutely confidential" or that litigation must be the "sole driving force" behind the report's creation. Contrary to plaintiffs' position, the former contention goes to waiver, *Leibel*, 250 Mich App at 243 ("whether the [work-product] privilege has been destroyed by this disclosure depends on whether the privilege has been waived"), and as for the latter, plaintiffs have cited no authority in support, see *Mudge v Macomb Co*, 458 Mich 87, 105; 580 NW2d 845 (1998) (issues not briefed or properly supported are abandoned), and otherwise ignore that HRC's consulting request form indicates that potential future litigation was the very purpose of this inquiry.

## C. WAIVER OF THE WORK-PRODUCT PRIVILEGE

This brings us to the question of whether plaintiffs waived the work-product privilege. "Like the attorney-client privilege, a party may waive work-product protections." *Augustine*, 292 Mich App at 421 (citation omitted). Although waiver may occur upon voluntary disclosure of work product to a third party since such action necessarily "runs the risk the third party may reveal it, either inadvertently or under examination by an adverse party," *Lawrence v Bay Osteopathic Hosp, Inc*, 175 Mich App 61, 75; 437 NW2d 296 (1989) (MACKENZIE, J., concurring in part, dissenting in part), that principle is not ironclad, see *In re Columbia/HCA Healthcare Corp Billing Practices Litigation*, 293 F3d 289, 304 (CA 6, 2002) ("We conclude, then, that while the mere showing of a voluntary disclosure to a third person will generally suffice to show waiver of the attorney-client privilege, it should not suffice in itself for waiver of the work-product privilege"), quoting *Permian Corp v United States*, 214 US App DC 396, 401; 665 F2d 1214 (1981). To the contrary, MCR 2.302(B)(3)(a) expressly recognizes that where work product is prepared for certain third parties, the qualified privilege may be retained. As MCR 2.302(B)(3)(a) states:

> Subject to the provisions of subrule (B)(4), a party may obtain discovery of documents and tangible things otherwise discoverable under subrule (B)(1) and prepared in anticipation of litigation or for trial by or for another party or another party's representative (including an attorney, consultant, surety, indemnitor, insurer, or agent) only on a showing that the party seeking discovery has substantial need of the materials in preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

This rule clearly identifies material subject to the work-product privilege. Pertinent here is the rule's provision that work product prepared either "by or for . . . another party's representative" qualifies. Defendants seize on this clause, arguing that because the rule expressly identifies an indemnitor as another party's representative, their disclosure to AECOM cannot constitute a waiver since the plain language of the court rule recognizes that disclosure as falling within the parameters of the privilege. As plaintiffs observe, however, defendants presented no evidence that the report was prepared "by or for" AECOM as the rule requires; it was only provided by defendants to AECOM after its preparation. But, while plaintiffs are correct on that point, this does not end our inquiry.

Related is defendants' claim that their common interest with AECOM prevents their disclosure of the HRC report from constituting a waiver. While courts in this state have not expressly addressed the so-called common-interest doctrine, several federal courts have concluded that the disclosure of work product to a third party does not result in a waiver if there is a reasonable expectation of confidentiality between the transferor (defendants) and the recipient (AECOM). See, e.g., *Deloitte*, 391 US App DC at 330. As the United States Court of Appeals for the District of Columbia Circuit explained:

> A reasonable expectation of confidentiality may derive from common litigation interests between the disclosing party and the recipient. . . . [T]he existence of common interests between transferor and transferee is relevant to

deciding whether the disclosure is consistent with the nature of the work-product privilege. This is true because when common litigation interests are present, the transferee is not at all likely to disclose the work product material to the adversary. [*Id*. (internal quotations marks and citations omitted, brackets in original).]

See also *In re Subpoenas Duces Tecum*, 238 US App DC 221, 226; 738 F2d 1367 (1984) (finding waiver of the work-product privilege because, among other things, "appellants did not have any proper expectations of confidentiality which might mitigate the weight against them of such general considerations of fairness in the adversary process"); compare *In re Chevron Corp*, 633 F3d 153, 165 (CA 3, 2011) ("the work-product doctrine protects an attorney's work from falling into the hands of an adversary, and so disclosure to a third party does not necessarily waive the protection of the work-product doctrine. Rather, the purpose behind the work-product doctrine requires a court to distinguish between disclosures to adversaries and disclosures to non-adversaries, and it is only in cases in which the material is disclosed in a manner inconsistent with keeping it from an adversary that the work-product doctrine is waived") (quotations marks, citation and brackets omitted), and *Lectrolarm Custom Sys, Inc v Pelco Sales, Inc*, 212 FRD 567, 572 (ED Cal, 2002) ("The existence of a common defense allows the parties and counsel allied in that defense to disclose privileged information to each other without destroying the privileged nature of those communications.").

Federal courts' application of the common-interest doctrine is instructive. Indeed, because both the state and federal rules recognizing the work-product doctrine are "virtually identical,"[4] *Leibel*, 250 Mich App at 245, our courts routinely "rely on federal cases for guidance in determining the scope of the work-product doctrine,"[5] *id*. at 245, which federal courts have found broader than the federal court rule's recognition of the doctrine, *Deloitte*, 391 US App DC

---

[4] Federal Rule of Civil Procedure 26(b)(3) provides in relevant part:

(A) *Documents and Tangible Things*. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

(*i*) they are otherwise discoverable under Rule 26(b)(1); and

(*ii*) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

[5] "Michigan's civil work-product privilege may be traced to the common-law work-product privilege that was established by the United States Supreme Court in *Hickman v Taylor*, 329 US 495; 67 S Ct 385; 91 L Ed 451 (1947)." *People v Gilmore*, 222 Mich App 442, 451; 564 NW2d 158 (1997) (citations omitted).

at 324 (work-product doctrine "partially codified" in Rule 26(b)(3)); *In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002*, 318 F3d 379, 383 (CA 2, 2003) (work-product doctrine "codified in part" in Rule 26(b)(3)).

Under the circumstances of this case, application of the common-interest doctrine is straightforward. We conclude that defendants had a reasonable expectation of confidentiality in sharing the HRC report with AECOM. As defendants' indemnitor for damages resulting from the design of the sewer construction project, the indemnification agreement required AECOM to cover losses caused "in whole or in part by the negligent acts or omissions of the ENGINEER." AECOM therefore undoubtedly shares defendants' interest in prevailing lest AECOM be on the hook financially. To be sure, it defies common sense, then, to suggest that defendants and AECOM did not share the common interest of preventing defendants' work product from falling into the hands of their adversary, even though AECOM is not a party to this action. See *Lectrolarm Custom Sys*, 212 FRD at 572 ("[w]here a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel, communications may be deemed privileged whether litigation has been commenced against both parties or not") (internal quotation marks and citation omitted).[6] This is the very goal the work-product privilege protects, and it is consistent with MCR 2.302(B)(3)(a), which would otherwise recognize as privileged material prepared in anticipation of litigation for an indemnitor like AECOM.

The circuit court's finding that "AECOM sounds like a potential adversary" does not alter our conclusion. Indeed, even assuming this as true, "the possibility of a future dispute between [the receiving party] and [the disclosing party] does not render [the receiving party] a potential adversary for the present purpose. If it did, any voluntary disclosure would constitute waiver." *Deloitte*, 391 US App DC at 329; see also *Schaeffler v United States*, ___ F Supp 2d ___, ___ (SD NY, 2014) ("The mere possibility that a dispute may arise at some point in the future between the disclosing party and the receiving party is insufficient to create a waiver of the work product protection.") (citations omitted). Rather, "[w]ork product protection is waived only if disclosure to a third party substantially increases the risk that it will be obtained by an adversary . . . . This risk must be evaluated from the viewpoint of the party seeking to take advantage of the doctrine." *United States v Ghavami*, 882 F Supp 2d 532, 541 (SD NY, 2012).

---

[6] Plaintiffs maintain that because defendants' joint defense agreement was not in place until *after* AECOM's disclosure, defendants may not assert the common-interest doctrine. This is not the rule, however. Indeed, while "a reasonable expectation of confidentiality may be rooted in a confidentiality agreement or similar arrangement between the disclosing party and the recipient," *Deloitte*, 391 US App DC at 330, the absence of such an agreement is not decisive as to whether parties share a common interest, see *Lennar Mare Island, LLC v Steadfast Ins Co*, ___ F Supp 2d ___, ___ (ED Cal, 2014), 2014 WL 1366252 (explaining that the common-interest exception in the context of the work-product privilege is construed more broadly than in the context of the attorney client privilege, and that therefore the existence of a joint defense agreement merely serves as "further evidence" that a disclosure did not waive the work-product privilege).

We cannot see how from defendants' viewpoint the disclosure of the report to AECOM would substantially increase the risk of plaintiffs obtaining the report. Rather, given AECOM'S common interest with defendants in defeating plaintiffs' allegations, the opposite would be true, especially considering that were defendants to prevail, AECOM would avoid the imposition of liability under the indemnification agreement.[7] It bears emphasis that this conclusion is also consistent with this Court's application of MCR 2.302(B)(3)(a), which affords work-product protection despite a potential conflict between a party and its representative. See *Koster*, 244 Mich App at 166 (holding that MCR 2.302(B)(3)(a) may apply to material prepared by or for a party's insurer despite the fact that " 'the tripartite relationship between insured, insurer, and defense counsel contains rife possibility of conflict' because '[t]he interest of the insured and the insurer frequently differ' ") (brackets in original), quoting *Atlanta Int'l Ins Co v Bell*, 438 Mich 512, 519; 475 NW2d 294 (1991). In short, the circuit court erred in finding that defendants' potential adversarial relationship with AECOM vitiated the work-product privilege.

Defendants are not yet in the clear, however. Indeed, although argued and briefed below, the circuit court did not address whether defendants disclosed the HRC report to a representative of Safeco. This is essential to determining whether defendants waived the privilege, for defendants do not and cannot argue that no waiver would have resulted from that alleged disclosure. This is because defendants could not reasonably expect that such a disclosure would insulate the report from an adversary. But, since the parties rely on conflicting affidavits concerning whether the Deputy Drain Commissioner in fact disclosed the report to the Safeco representative, we are in no position to resolve this issue. The circuit court must make the necessary findings on remand to determine whether defendants sufficiently disclosed the report to Safeco and in so doing, waived the work-product privilege.

Before concluding, we note briefly that plaintiffs have advanced two additional arguments in favor of waiver. The first pertains to defendants' alleged promise to share the HRC report with them. The second pertains to the effect of defendants filing their counterclaims, i.e., whether filing their counterclaims constituted a waiver.[8] However, despite the fact that plaintiffs' *entire* motion hinged on the issue of waiver, plaintiffs presented neither additional contention below. Thus, even setting aside our reticence to address these unpreserved arguments, plenary review is otherwise improper since the circuit court may determine on remand whether plaintiffs may attempt these proverbial second (and third) bites at the apple.

## III. CONCLUSION

We affirm the circuit court's order granting plaintiffs' motion on the basis that the report constitutes material prepared in anticipation of litigation, but we vacate the order to the extent

---

[7] Plaintiffs' reliance on *Cooey v Strickland*, 269 FRD 643, 653 (SD Ohio, 2010) for the proposition that an attorney's presence is necessary to preserve application of the common-interest doctrine is misplaced since the application of the doctrine in that context pertained to preserving the attorney-client privilege.

[8] See *Howe v Detroit Free Press, Inc*, 440 Mich 203, 221-222; 487 NW2d 374 (1992).

that it found the work-product privilege applicable to the report in its entirety. We further reverse the circuit court's order to the extent the court found defendants had "waived any privilege" to the report. We remand for proceedings consistent with this opinion, including an in camera review of the report to determine the scope of the work-product doctrine's application, for resolution of whether defendants disclosed the report to Safeco, and whether any such disclosure constituted a waiver of the work-product privilege.

We do not retain jurisdiction. No costs, neither party having prevailed in full. MCR 7.219.

/s/ William C. Whitbeck
/s/ E. Thomas Fitzgerald
/s/ Christopher M. Murray