# STATE OF MICHIGAN

# COURT OF APPEALS

NORTH CRE VENTURE 2010-12, LLC,

      Plaintiff-Appellee,

v

R. B. LAND & BUILDING COMPANY,
ROBERT T. KATO, and BANN KATO,

      Defendants-Appellants,

and

THOMAS J. RYAN,

      Intervenor.

UNPUBLISHED
September 10, 2015

No. 321310
Wayne Circuit Court
LC No. 12-010579-CH

---

Before: MURRAY, P.J., and METER and OWENS, JJ.

PER CURIAM.

Defendants appeal as of right an order denying their objection to the sale of receivership assets. We affirm.

This case arose from the court-appointed receiver's sale of a retail strip mall formerly owned by defendant R. B. Land & Building Company in Detroit. As part of a settlement agreement between plaintiff and defendants, the trial court issued an order stating that the receiver's sale of receivership assets was subject to approval after notice to defendants and a hearing in open court. The order further required any sale to be for the "best price obtainable." The receiver obtained court approval to sell the Detroit property for $1.1 million, then amended the sale price to $950,000 to account for previously undiscovered environmental issues that required remediation.

Defendants argue that the receiver's sale violated the trial court's order because they lacked notice of the reduced sale price and that the trial court erred in denying their objection to the sale. We disagree.

"Interpreting the meaning of a court order involves questions of law that we review de novo on appeal." *Silberstein v Pro-Golf of America, Inc*, 278 Mich App 446, 460; 750 NW2d 615 (2008). This Court reviews a "trial court's factual findings for clear error and the decisions

-1-

that are within the trial court's discretion for an abuse of discretion." *Hanton v Hantz Fin Servs, Inc*, 306 Mich App 654, 661; 858 NW2d 481 (2014) (citation and quotation marks omitted). A trial court's factual findings are clearly erroneous when "there is no evidentiary support for them or where there is supporting evidence but the reviewing court is nevertheless left with a definite and firm conviction that the trial court made a mistake." *Hill v City of Warren*, 276 Mich App 299, 308; 740 NW2d 706 (2007). In reviewing a trial court's factual findings, "[t]his Court affords great deference to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *Augustine v Allstate Ins Co*, 292 Mich App 408, 424-425; 807 NW2d 77 (2011) (citation and quotation marks omitted). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *D'Alessandro Contracting Group, LLC v Wright*, 308 Mich App 71, 76; 862 NW2d 466 (2014).

"Stipulated orders that are accepted by the trial court are generally construed under the same rules of construction as contracts." *Phillips v Jordan*, 241 Mich App 17, 21; 614 NW2d 183 (2000), app dis 618 NW2d 591 (2000). This Court interprets a contract "according to its plain and ordinary meaning." *Holmes v Holmes*, 281 Mich App 575, 593; 760 NW2d 300 (2008). If contract language is clear and unambiguous, the language's meaning is a question of law. *Butler v Wayne Co*, 289 Mich App 664, 671; 798 NW2d 37 (2010). Conversely, if the contract language "is subject to two reasonable interpretations, factual development is necessary to determine the intent of the parties[.]" *Holmes*, 281 Mich App at 594 (citations and quotation marks omitted). "[C]ourts must construe unambiguous contract provisions as written." *Id*. "But contract terms should not be considered in isolation and contracts are to be interpreted to avoid absurd or unreasonable conditions and results." *Hastings Mut Ins Co v Safety King, Inc*, 286 Mich App 287, 297; 778 NW2d 275 (2009).

In this case, plaintiff and defendants, as part of their settlement agreement, stipulated to an amendment of the trial court's order appointing a receiver. The trial court accepted these stipulations and memorialized them in a court order. Therefore, this Court interprets the order under the same rules of construction as a contract. See *Phillips*, 241 Mich App at 21.

The trial court did not clearly err in its implicit finding that $950,000 was the "best price obtainable" under section 6.5.1(a) of the amended order. Admittedly, the trial court never stated on the record that either the $1.1 million price or the $950,000 price was the best price obtainable. The court explicitly approved the $1.1 million sale price, however, and that explicit approval served as an implicit holding that the sale complied with the amended order. As for the $950,000 price, the receiver, Thomas J. Ryan, submitted an affidavit stating that the amended figure was the best price obtainable, and he filed the affidavit with the court 16 days before the hearing on defendants' objection to the sale. The court's denial of defendants' objection on March 26, 2014, operated as both an approval of the amended price and a holding that the sale complied with the amended order.

Defendants asserted in the lower court—and continue to do so on appeal—that they were ready, willing, and able to bid $1 million for the Detroit property. The lower court record indicates, however, that the trial court was dubious about defendants' ability to follow through on this claim, and defendants present no evidence, other than defendant Robert Kato's conclusory affidavit, to show otherwise. The trial court had been made aware that defendants had failed to make payments on the Detroit property for approximately three years before

plaintiff took action against them. The trial court had also been made aware that defendants made two previous settlement offers to plaintiff, both of which were denied. Additionally, the trial court granted a motion allowing defendants' original counsel to withdraw from representation, in part because defendants had "failed to substantially fulfill [their] obligations to Counsel regarding Counsel's services in this matter" and would cause "an unreasonable financial burden on Counsel." Although the trial court did not state that he thought that defendants' purported $1 million bid was an unrealistic option, it clearly approved the amended sale price. In light of the record, we are not left with a definite and firm conviction that the trial court made a mistake in deciding that $950,000 was the best price obtainable under the circumstances.

Likewise, the trial court did not clearly err in finding that the sale complied with section 6.5.1(g) of the amended order, which provides that a sale of receivership property "shall be subject to Approval, at a hearing in open court, after giving notice to defendants through their attorney." The section requires (1) notice to defense counsel, (2) a hearing in open court, and (3) approval of the sale. Defendants do not seriously contend on appeal that the potential $1.1 million sale violated the provision: Ryan filed a motion to sell the Detroit property and properly served it on defense counsel electronically, a hearing followed on January 24, 2014, and the trial court issued its written approval of the sale after the hearing.

Defendants do, however, contend that they lacked notice of the reduced price and that the sale therefore violated section 6.5.1(g). Defendants misread the provision. Ryan provided defense counsel with notice of the price reduction by way of an e-mail on February 25, 2014. The court then conducted a hearing in open court regarding the price reduction on March 14, 2014, explicitly approving the $950,000 price. The court then issued a written order denying defendants' objections—and implicitly granting its approval of the $950,000 price—on March 26, 2014. Therefore, the sale satisfied the three specified conditions in section 6.5.1(g) in spite of the fact that the actual sale predated the approval.

Section 6.5.1(g) clearly provides that a sale of the property is *subject to* approval after a hearing and notice, not that the approval must necessarily be given *before* the sale is completed. Additionally, paragraph 11(F) of the purchase agreement for the Detroit property provided that "This Agreement is subject to the Receivership Order, as amended, and Court approval of the terms and conditions herein. Seller agrees to promptly seek court approval." Therefore, the sale for $950,000 was not a *fait accompli* despite the existence of a purchase agreement—the amended order still mandated official approval by the court, and the court gave its approval verbally and in writing after conducting a hearing with defense counsel present. Accordingly, the trial court did not clearly err in holding that notice and approval were proper under the amended order.

We acknowledge that the trial court's original order appointing a receiver provides that approval only occurs through the parties' written consent or by the trial court's specific "Order of Approval." The trial court, however, evinced its unqualified approval of the $1.1 million and the $950,000 prices both verbally and in writing. A determination that the court's approval was invalid under the order simply because it was not specifically titled "Order of Approval" would lead to an absurd, unreasonable result. See *Hastings Mut Ins Co*, 286 Mich App at 297. The court did not abuse its discretion in denying defendants' objection to the sale because, for the

reasons discussed, approving the sale was within the range of reasonable and principled outcomes. See *D'Alessandro Contracting Group, LLC*, 308 Mich App at 76.

Affirmed.

/s/ Christopher M. Murray
/s/ Patrick M. Meter
/s/ Donald S. Owens