# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT SEAY,

        Plaintiff,

and

ELITE CHIROPRACTIC, PC AND ELITE
HEALTH CENTERS, INC.,

        Intervening Plaintiffs-Appellants,

and

AMERICAN ANESTHESIA ASSOCIATES,
LLC,

        Intervening Plaintiff,

v

21ST CENTURY INSURANCE COMPANY,

        Defendant-Appellee,

and

CHERYL A. BROOKS and JANE DOE,

        Defendants.

UNPUBLISHED
October 24, 2017

No. 330099
Wayne Circuit Court
LC No. 14-000520-NI

---

ROBERT SEAY,

        Plaintiff-Appellee,

and

ELITE CHIROPRACTIC, PC, and ELITE
HEALTH CENTERS, INC.,

        Intervening Plaintiffs-
        Appellees/Cross-Appellants,

and

-1-

AMERICAN ANESTHESIA ASSOCIATES, LLC,

       Intervening Plaintiff,

v

21ST CENTURY INSURANCE COMPANY,

       Defendant-Appellant/Cross-
       Appellee,

and

CHERYL A. BROOKS and JANE DOE,

       Defendants.

No. 333626
Wayne Circuit Court
LC No. 14-000520-NI

---

Before: SAAD, P.J., and SERVITTO and GADOLA, JJ.

PER CURIAM.

In **Docket No. 330099**, intervening plaintiffs, Elite Chiropractic, PC and Elite Health Centers, Inc. (hereinafter "Elite" jointly), appeal as of right the judgment of no cause of action in favor of defendant, 21st Century Insurance Company, in this action to recover personal injury protection benefits ("PIP" benefits) under the no-fault act, MCL 500.3101 *et seq*. In **Docket No. 333626**, 21st Century appeals as of right the order denying its request for case evaluation sanctions against plaintiff, Robert Seay. On cross-appeal, Elite appeals from this same order the grant of sanctions in favor of 21st Century in the amount of $25,000 against Elite under MCL 500.3148(2). We affirm in part and reverse in part and remand.

## I. DOCKET NO. 330099

### A. DUE PROCESS

As an intervening plaintiff, Elite contends that it was deprived of due process by its preclusion from directly participating in voir dire and in not being permitted by the trial court to make an opening statement. Elite contends that despite sharing certain common interests with Seay, it also had different or contrary interests that it should have been permitted to independently pursue before the jury. Elite asserts that had it been allowed to participate in voir dire, the difficulties that arose following the empanelment of the jury and leading to the dismissal of a juror may have been avoided.

"Generally, an issue is not properly preserved if it is not raised before, addressed, or decided by the circuit court or administrative tribunal." *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005). At the initiation of trial, procedural issues were raised

-2-

regarding whether counsel for the intervening parties would be permitted to ask questions on voir dire, present an opening statement and question witnesses during the trial. The trial court indicated that separate trials were not being conducted, therefore counsel for Seay and counsel for Elite needed to coordinate their efforts to avoid unnecessary duplication in questioning witnesses. Counsel did not object to the methodology or procedure, as set forth by the trial court, or suggest that Elite was being denied due process. As such, the issue as stated is not properly preserved for appellate review.

"Statutory interpretation is a question of law, which this Court reviews de novo." *New Properties, Inc v George D Newpower, Jr, Inc*, 282 Mich App 120, 138; 762 NW2d 178 (2009). Similarly, constitutional issues are reviewed de novo. *Van Buren Twp v Garter Belt, Inc*, 258 Mich App 594, 602; 673 NW2d 111 (2003). In contrast:

> Review of an unpreserved error is limited to determining whether a plain error occurred that affected substantial rights. To avoid forfeiture under the plain-error rule, three requirements must be met: (1) an error must have occurred; (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights. [*Rivette v Rose-Molina*, 278 Mich App 327, 328-329; 750 NW2d 603 (2008) (citations omitted).]

At the outset, we find it necessary to recognize our Supreme Court's recent decision in *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, ___ Mich ___; 895 NW2d 490 (2017) (Docket No. 152758). The ruling in *Covenant*, while issued after the trial court's decision in this litigation, serves to upend many of the positions asserted and arguments proffered in this matter. Specifically, the ruling in *Covenant* conflicts with Elite's suggestion regarding a violation of due process. Our Supreme Court has ruled that a "review of the statutory no-fault scheme reveals no support for an independent action by a healthcare provider against a no-fault insurer." *Id.*; slip op at 2. The Court found that although MCL 500.3112 "permits a no-fault insurer to discharge its liability to an injured person by paying a healthcare provider directly, on the injured person's behalf," the provision does "not grant healthcare providers a statutory cause of action against insurers to recover the costs of providing products, services, and accommodations to an injured person." *Id.* And, in *W A Foote Mem Hosp v Michigan Assigned Claims Plan*, __Mich App__; __NW2d__(2017) this Court undertook an extensive and detailed analysis of the *Covenant* decision, ultimately concluding that *Covenant* is to be applied retroactively.

Given our Supreme Court's ruling that healthcare providers lack standing under the no-fault scheme to pursue an independent action against an insurer, a due process claim is not viable. "To have standing, a party must have a legally protected interest that is in jeopardy of being adversely affected." *Dep't of Treasury v Comerica Bank*, 201 Mich App 318, 329-330; 506 NW2d 283 (1993). In accordance with *Covenant*, Elite lacks a "legally protected interest." Regardless, even before the rulings in *Covenant* and *W A Foote Mem Hosp*, Elite's contention lacked merit.

In accordance with MCR 2.507(F): "The court may limit the time allowed each party for opening statements and final arguments. It shall give the parties adequate time for argument, having due regard for the complexity of the action, and may make separate time allowances for co-parties whose interests are adverse." Similarly, with regard to the allocation of peremptory

challenges during voir dire, MCR 2.511(E)(2) recognizes the relationship between different entities or parties "on the same side" and their entitlement to a specific number of peremptory challenges premised on their alignment or the existence of "adverse interests." As discussed in *Dobrzenski v Dobrzenski*, 208 Mich App 514, 515; 528 NW2d 827 (1995):

> Due process applies to any adjudication of important rights. It is a flexible concept calling for such procedural protections as the particular situation demands. Due process requires fundamental fairness, which involves consideration of the private interest at stake, the risk of an erroneous deprivation of such interest through the procedures used, the probable value of additional or substitute procedures, and the state or government interest, including the function involved and the fiscal or administrative burdens imposed by substitute procedures. [Citations and quotation marks omitted.]

Elite is unable to demonstrate that the trial court's procedural restrictions were fundamentally unfair. In this instance, Elite's concerns are aligned with Seay's because both are seeking the payment of PIP benefits to Seay. While the trial court precluded Elite's counsel from providing an opening statement that was separate from or in addition to that provided by Seay's counsel, it indicated that counsel should coordinate their efforts to avoid having the "jurors hear multiple openings" that were duplicative. Specifically, the trial court deemed a separate opening statement by Elite to be unnecessary because, "It's the same issue." The trial court did indicate that if there was a disagreement between the parties or one would not be able "to cover the issues in one opening statement," an exception might be made. The trial court afforded counsel for Elite the opportunity to discuss the opening statement before initiating the proceedings. Notably, Elite does not suggest or assert that Seay's counsel failed to include, identify or present concerns that were significant to Elite in her opening statement. Elite does not proffer what additional information or assertions it would have provided in its opening statement that would distinguish it from the opening statement by Seay's counsel or how any particular omission from the opening statement allegedly affected the outcome of the proceedings.

"[T]he purpose of an opening statement is to tell the jury what the advocate will attempt to prove." *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 503; 668 NW2d 402 (2003). Its importance is somewhat diminished by the ability to waive the provision of an opening statement, MCR 2.507(A), and the absence of evidentiary value attributable to such statements, see *Guerrero v Smith*, 280 Mich App 647, 658; 761 NW2d 723 (2008) (indicating that the "arguments and remarks of the attorneys were not evidence."). In the circumstances of this case, Seay's counsel identified the parties, the relevant events and that Seay had incurred treatment as a result of his accident that involved a motor vehicle, the costs of which 21st Century had declined to pay. As such, despite the preclusion by the trial court of Elite presenting its own opening statement, the prohibition cannot be shown to have adversely affected the outcome of the proceedings, to have inhibited Elite's claims, or to have comprised error.

Elite also challenges the trial court's preclusion of its direct involvement in voir dire of the jury. The trial court indicated that it permits only "a very, very brief period for anyone to ask voir dire questions because I cover them." The trial court did not prevent Elite from proposing questions to be directed to the potential jurors. Rather, it required Elite to work with Seay's

-4-

counsel, indicating it would permit "one side or the other" to ask a question deemed to be appropriate. The trial court also indicated it would permit follow up questions if during voir dire "someone brings up something of special interest to you." During voir dire, it became obvious that Elite's counsel had generated questions to be directed to the potential jurors, when Seay's counsel indicated "looking at co-counsel's list, you know, I don't think I have any other questions." As such, the implication is that Elite was able to productively participate in voir dire without any restriction, except for the requirement that the questioning be done by one attorney rather than both. As such, Elite did meaningfully engage or participate in voir dire.

Further, Elite's contention that if it had been allowed a more direct role in voir dire, the necessity of dismissing a juror would have been avoided is ludicrous. After counsel had indicated satisfaction with the jurors selected but before the jury was sworn in, a juror posed a question to the trial court to acknowledge that although the prospective jurors had been queried if spouses worked for an insurance company, he did not previously reveal that his daughter worked for an insurance company not involved in this litigation. The trial court initiated further inquiry of the juror to determine if his daughter's employment would, in some manner, influence his ability to be objective and unbiased and also permitted Seay's counsel to question the juror. When the additional inquiry concluded, the trial court offered counsel the opportunity to exercise another peremptory challenge, which was declined.

On the second day of trial, the same juror informed the trial court and counsel, outside the presence of the remaining jurors that while at dinner the previous evening he overheard a conversation in which the reputation of Seay's physician, Dr. Radden, was being impugned. The juror acknowledged that overhearing the conversation caused him to seriously question the testimony of Dr. Radden that was presented on the first day of trial, before having overheard this exchange at dinner. The juror expressed concern that, having been involuntarily privy to this discussion regarding Dr. Radden, the juror would have difficulty remaining "fair and impartial." Seay's counsel requested that the juror be excused and the trial court dismissed the juror.

Initially, Elite's counsel did not challenge this juror, through Seay's counsel, when he first revealed his relationship to an individual employed by an insurance company. In effect, the approval of this juror by Seay's counsel obviates any objection now purportedly asserted. "Waiver is the voluntary and intentional relinquishment of a known right. 'One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error.'" *Varran v Granneman*, 312 Mich App 591, 623; 880 NW2d 242 (2015) (citation omitted). Further, it is disingenuous and ludicrous of Elite to contend that it could have, on voir dire, somehow anticipated or predicted the juror's inadvertent overhearing of a discussion after the jury was empaneled and while engaged in a neutral social activity that altered the juror's ability to be fair and impartial. At the request of Seay's counsel, the trial court excused this juror. Therefore, the juror's involuntarily gained information regarding the reputation of Dr. Radden was irrelevant to the outcome of the proceedings or the remaining jurors' deliberations. Given the swiftness with which the jury returned a verdict in this matter, it is highly unlikely that the absence of the excused juror was dispositive or significant to the verdict rendered.

B.  ADMISSIBILITY OF EVIDENCE – EXPERT WITNESS

Elite contends the trial court erred in permitting Polly Swingle to testify as an expert regarding physical therapy at trial. Elite's objection is not premised on Swingle's qualifications as an expert or her specific testimony. Rather, Elite argues that Swingle's delay in preparing and providing it with a report of her conclusions that would serve as the basis for her testimony should have precluded her presentation as a witness.

Whether a witness qualifies as an expert and the admissibility of the testimony of the witness are reviewed by this Court for an abuse of discretion. *Surman v Surman*, 277 Mich App 287, 304-305; 745 NW2d 802 (2007). "An abuse of discretion exists if the decision results in an outcome outside the range of principled outcomes." *Id.* at 305. To the extent that this issue pertains to questions regarding the interpretation or application of the court rules, review is de novo. *AFP Specialties, Inc v Vereyken*, 303 Mich App 497, 504; 844 NW2d 470 (2014).

Although the facts and opinions in reports authored by experts are not deemed to constitute "work product per se,"

> [t]he arrangement of those facts and opinions in a report, made directly responsive to the inquiries of an attorney, is, however, work product; a disclosure of the report itself would betray those thoughts, mental impressions, formulations of litigation strategy, and legal theories of the attorney that are protected by the work-product [privilege]. To hold that a party to a litigation could attain copies of those reports by merely making a demand for production without more would have the practical effect of chilling the ability of an attorney and his retained expert witness to freely communicate in writing. [*D'Alessandro Contracting Group, LLC v Wright*, 308 Mich App 71, 78; 862 NW2d 466 (2014) (citations and quotation marks omitted).]

In the circumstances of this case, however, Swingle's report was provided before the initiation of trial to Elite, arguably waiving any alleged privilege. "Like the attorney-client privilege, a party may waive work-product protections." *Id.* at 81 (citation omitted).

Contrary to Elite's underlying supposition, provision of an expert's report is not mandated, except under very specific circumstances. Specifically, MCR 2.302(B) provides, in relevant part:

> (3) *Trial Preparation; Materials*.

> (a) Subject to the provisions of subrule (B)(4), a party may obtain discovery of documents and tangible things otherwise discoverable under subrule (B)(1) and prepared in anticipation of litigation or for trial by or for another party or another party's representative (including an attorney, consultant, surety, indemnitor, insurer, or agent) only on a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental

impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

\* \* \*

(4) *Trial Preparation; Experts.* Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subrule (B)(1) and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

(a)(i) A party may through interrogatories require another party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter about which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

(ii) A party may take the deposition of a person whom the other party expects to call as an expert witness at trial. The party taking the deposition may notice that the deposition is to be taken for the purpose of discovery only and that it shall not be admissible at trial except for the purpose of impeachment, without the necessity of obtaining a protective order as set forth in MCR 2.302(C)(7).

(iii) On motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions (pursuant to subrule [B][4][c]) concerning fees and expenses as the court deems appropriate.

Elite does not dispute that 21st Century disclosed the identity and area of expertise of Swingle on its witness list before trial. Elite did not schedule Swingle's deposition. Nor has Elite demonstrated "substantial need" or "undue hardship" to substantiate the discovery of the materials or the submission of a specific request for more detailed information pertaining to Swingle's anticipated testimony or opinions. See *Backiel v Sinai Hosp of Detroit*, 163 Mich App 774, 779; 415 NW2d 15 (1987) ("In those instances when reasons for seeking the reports are legitimate, the MCR 2.302(B)(3)(a) allowance for discovery of documents and tangible things prepared in anticipation of litigation or for trial upon a showing of 'substantial need' and 'undue hardship' affords defendant an adequate remedy.").

Contrary to the assumption of Elite, the Michigan Court Rules do not require that an expert prepare a written report. Despite the absence of any requirement in the Michigan Court Rules, Swingle did author a report, which was provided to Elite's counsel within days of its completion. The trial court found that the timeliness of the provision of Swingle's report to Elite was sufficient, indicating, "[Y]ou've gotten more time on that than he's gotten on the other one." Elite's assertion that the failure to provide Swingle's report at an earlier date precluded its ability to prepare for trial and cross-examination of this witness is directly attributable to Elite's own failure to engage in permissible discovery through the scheduling of Swingle's deposition or the submission of pointed inquiries to 21st Century regarding her proposed or anticipated testimony. Having failed to establish or identify a legal basis for its assertion of error, Elite's contention regarding the necessity of the provision of an expert report by Swingle is without merit. "An

-7-

appellant may not merely announce his or her position and leave it to this Court to discover and rationalize the basis for his or her claims. And, where a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned." *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 695; 880 NW2d 269 (2015) (citations omitted).

## II. DOCKET NO. 333626

On appeal, 21st Century contends the trial court erred in failing to award it mandatory case evaluation sanctions against Seay. On cross-appeal, Elite contends the trial court erred in awarding 21st Century sanctions against Elite in the amount of $25,000 under MCL 500.3148(2).

As recognized in *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008):

> A trial court's decision whether to grant case-evaluation sanctions under MCR 2.403(O) presents a question of law, which this Court reviews de novo. We review for an abuse of discretion a trial court's award of attorney fees and costs. An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes. [Citations and quotation marks omitted.]

This Court reviews de novo "questions of law, including the interpretation of statutes and the construction, interpretation, and application of the court rules." *Truel v City of Dearborn*, 291 Mich App 125, 131; 804 NW2d 744 (2010).

In addition:

> The decision to award or deny attorney fees under MCL 500.3148(2) is reviewed for an abuse of discretion. An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes. However, for purposes of MCL 500.3148(2), a trial court's findings regarding the fraudulent, excessive, or unreasonable nature of a claim should not be reversed on appeal unless they are clearly erroneous. A decision is clearly erroneous when a reviewing court is left with a firm and definite conviction that a mistake was made by the lower court. Any issues regarding what legally constitutes fraud in some respect, excessiveness, and an unreasonable foundation are questions of law subject to de novo review. [*Gentris v State Farm Mut Auto Ins Co*, 297 Mich App 354, 361; 824 NW2d 609 (2012) (citations and quotation marks omitted).]

Initially, 21st Century's claim regarding the failure to award case evaluation sanctions under MCR 2.403(O) against Seay will be addressed. The acknowledged "purpose of [MCR 2.403(O)] is to encourage the parties to seriously consider the evaluation and provide financial penalties to the party that, as it develops, 'should' have accepted but did not." *Smith*, 481 Mich at 527-528.

The trial court denied 21st Century's request for case evaluation sanctions against Seay, based on this court rule, because 21st Century also "rejected case evaluation as did Robert Seay." The circumstance of dual rejection does not preclude the award of case evaluation sanctions. As noted in MCR 2.403(O)(1), "[I]f the opposing party has also rejected the evaluation, a party is entitled to costs only if the verdict is more favorable to that party than the case evaluation." In

this instance, Seay and 21st Century both rejected the $40,000 case evaluation award in favor of Seay. At the conclusion of trial, the jury entered a no cause of action judgment and declined to award any monetary recovery to Seay. The preliminary language contained in MCR 2.403(O)(1), indicates: "If a party has rejected an evaluation and the action proceeds to verdict, that party *must* pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation."[1] Use of the word "must" indicates that the imposition of sanctions is deemed to be mandatory in unanimous evaluation awards. *Allard v State Farm Ins Co*, 271 Mich App 394, 398; 722 NW2d 268 (2006). Only "three narrow exceptions to the mandatory imposition of case evaluation sanctions" have been found to exist. *Id.* at 399. Specifically:

> Under the first exception, the trial court may decline to award costs in a case involving equitable relief when the verdict (considering both equitable and monetary relief) is more favorable to the rejecting party than the evaluated award. The second exception applies only to dramshop actions. Finally, the trial court "may, in the interest of justice, refuse to award costs" when the judgment is "entered as a result of a ruling on a motion after the party rejected the [case] evaluation" under MCR 2.403(O) (2)(c). [*Id.* (citations omitted).]

None of the recognized exceptions are applicable to the circumstances of this case.

The trial court implied in its rulings that it would not impose sanctions against Seay, with regard to 21st Century's request under MCL 500.4138(2), because of his minimal financial resources, the limited value of Seay's personal claim for replacement services, and the inapplicability or viability of a fraud claim against Seay for presenting the billings of his medical providers. Arguably, without using specific terminology, the trial court's ruling suggests that the denial of case evaluation sanctions was apropos in the interest of justice. MCR 2.403(O)(11) states: "If the 'verdict' is the result of a motion as provided by subrule (O)(2)(c), the court may, in the interest of justice refuse to award actual costs." The problem that arises is that for MCR 2.403(O)(11) to be applicable, the verdict obtained must be the result of "a judgment entered as a result of a ruling on a motion after rejection of the case evaluation" in accordance with MCR 2.403(O)(2)(c). The no cause of action judgment was, in this instance, the result of a jury verdict, MCR 2.403(O)(2)(a). Consequently, MCR 2.403(O)(11) is inapplicable and the trial court erred in failing to award mandatory case evaluation sanctions to 21st Century against Seay.

Next, on cross-appeal, Elite asserts the trial court erred in awarding $25,000 in sanctions to 21st Century under MCL 500.4138(2), premised on a lack of proof that the services provided were excessive or fraudulent. According to 21st Century, the jury's no cause verdict necessarily implies that the Elite billings were excessive and not reasonably necessary or fraudulent and that the testimony of Dr. Miller called into question whether certain procedures, as billed by Elite and others, actually occurred.

---

[1] Emphasis has been added.

Our Supreme Court's decision in *Covenant* has completely altered the legal landscape on this and other related issues. Our Supreme Court has determined:

> While [the service provider] primarily cites MCL 500.3112 as establishing a healthcare-provider cause of action under the no-fault act, there is nothing in the language of this provision that can reasonably be interpreted as vesting a healthcare provider with a right to demand reimbursement from a no-fault insurer for services the provider rendered to an insured. Although this provision allows insurers to pay a provider of no-fault services directly "for the benefit of" the insured, it does not establish a concomitant claim enforceable by an insured's benefactors. Plaintiff has not pointed to any other provision in the no-fault act that bestows on healthcare providers a right to directly sue a no-fault insurer. [*Covenant*, ___ Mich at ___; slip op at 20-21 (footnotes omitted).]

In other words, it has been determined, "the no-fault act does not, in any provision, explicitly confer on healthcare providers a direct cause of action against insurers." *Id.*; slip op at 11. This conclusion was explained, in part, by the Court's analysis of other, related statutory language contained within the no-fault act.

The Court concluded that MCL 500.3107(a), referencing "allowable expenses . . . , is not amenable to an interpretation that would allow a healthcare provider to sue an insurer for reimbursement." *Covenant*, ___ Mich at ___; slip op at 13. Specifically:

> MCL 500.3107(1)(a) provides that benefits are "payable" for "[a]llowable expenses consisting of all reasonable charges incurred. . . ." In the context of the no-fault act, this Court has defined "incur" as " '[t]o become liable or subject to, [especially] because of one's own actions.' " Charges for healthcare services rendered are not "incurred" by a healthcare provider because a provider is not subject to charges for the products, services, and accommodations it delivers to others. Nor do providers become "liable" for allowable expenses. Rather, charges for healthcare are incurred by others, most commonly patients, and those patients are the ones who become liable for payment of those charges. Therefore, because a healthcare provider does not incur reasonable charges and is not liable for allowable expenses, [the service provider's] argument that MCL 500.3107(1)(a) permits a provider to directly sue an insurer for reimbursement is not persuasive. [*Id.* at 13-14 (footnotes omitted).]

Of additional significance is the Court's addressing of the relevant language of MCL 500.3112, which provides:

> Payment by an insurer in good faith of personal protection insurance benefits, to or for the benefit of a person who it believes is entitled to the benefits, discharges the insurer's liability to the extent of the payments unless the insurer has been notified in writing of the claim of some other person.

The Court determined:

The phrase "claim of some other person" does not itself confer on any person a "claim" or "right" to recover benefits. Rather, it presupposes that "some other person" otherwise possesses a claim for PIP benefits against the insurer. Significantly, [the service provider] is unable to demonstrate that the no-fault act elsewhere confers on a healthcare provider a right to claim benefits from a no-fault insurer. [*Covenant*, ___ Mich at ___; slip op at 17-18 (footnotes omitted).]

In turn, the above reasoning leads to the Court's specific rejection that medical providers are claimants under the no-fault act, explaining:

MCL 500.3148, which pertains to attorney fees, states in part that "[a]n attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue." MCL 500.3148(1). [Covenant] similarly argues that the statute's reference to "claimant" rather than "injured person" indicates that healthcare providers have the right to bring an independent lawsuit for payment of PIP benefits.

[Covenant's] reliance on the references to "claimant" rather than "injured person" in MCL 500.3145(1) and MCL 500.3148 is helpful to [its] argument only if healthcare providers are proper claimants under the no-fault act. The provisions cited by [Covenant] do not establish that providers possess a claim under the act. Because MCL 500.3145(1) and MCL 500.3148 do not create rights to PIP benefits that do not otherwise exist, [Covenant's] reliance on these provisions is misplaced. [*Id.* at 21 n 37.]

Thus, our Supreme Court has definitively determined that medical providers, such as those referenced herein, are not construed to be "claimants" for purposes of the no-fault act. And, as previously indicated, *Covenant* is to be applied retroactively. *W A Foote Mem Hosp*, slip op at 14.

MCL 500.3148(2) states, in relevant part: "An insurer *may be allowed* by a court an award of a reasonable sum against a claimant as an attorney's fee for the insurer's attorney in defense against a claim that was in some respect fraudulent or so excessive as to have no reasonable foundation" (Emphasis added). The general applicability of this provision has previously been discussed by this Court in *Gentris*, 297 Mich App at 361-362:

The language of MCL 500.3148(2) indicates that a court may exercise its discretion by awarding attorney fees to an insurer, but only if a claim was in some respect fraudulent or so excessive as to have no reasonable foundation. The statute does not mandate that the court award attorney fees on a finding of fraud or excessiveness, nor does the statute require the court's findings to be based on the jury's verdict. However, the findings must be able to survive review under the clearly-erroneous standard. Further, an award of attorney fees under the statute can be entered by a court on the basis of either fraud standing alone or excessiveness with no reasonable foundation or, of course, on the basis of both factors. [Footnote omitted.]

This ruling, dealing only with the discretionary nature of such awards and the general requirements associated to qualify for an award under MCL 500.3148(2), is not contrary to or implicated by our Supreme Court's ruling in *Covenant*. However, *Covenant* does implicate the applicability of this provision with regard to the trial court's award against Elite, because Elite does not qualify as a claimant under MCL 500.3148(2). *Covenant*, ___ Mich at ___; slip op at 20-21 n 37. As such, the trial court's grant of an award in favor of 21st Century against Elite is contrary to the statutory provision, necessitating reversal.

Finally, any subsequent assertion by 21st Century that it was entitled to sanctions under MCL 500.3148(2) against Seay is without merit. First, this claim has not been specifically raised on appeal. Second, the award of such sanctions is discretionary, and within the authority of the trial court to deny. Third, the trial court clearly indicated it saw no need to impose such sanctions against Seay based on the inability to demonstrate fraudulent conduct on the part of Seay simply by "presenting these bills that a doctor presented to him[.]"

We affirm the trial court's rulings in Docket Nos. 330099 and reverse the trial court's rulings in Docket No. 333626, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Henry William Saad
/s/ Deborah A. Servitto
/s/ Michael F. Gadola

-12-