# STATE OF MICHIGAN

# COURT OF APPEALS

MEEMIC INSURANCE COMPANY, as the
subrogee of CATHERINE EPPARD and KEVIN
BYRNES,

        Plaintiff-Appellant,

v

MICHIGAN MILLERS MUTUAL INSURANCE,
AUTO-OWNERS INSURANCE COMPANY,
RICK PUTVIN, KIP JAMES CERGENUL, a/k/a
JIM CERGENUL, and STATE FARM MUTUAL
AUTO INSURANCE COMPANY,

        Defendants,

and

HOME-OWNERS INSURANCE COMPANY,

        Defendant-Appellee.

FOR PUBLICATION
October 27, 2015
9:10 a.m.

No. 322072
Wexford Circuit Court
LC No. 13-024887-NF

Before: M. J. KELLY, P.J., and MURRAY and SHAPIRO, JJ.

PER CURIAM.

In this insurance coverage dispute, plaintiff, MEEMIC Insurance Company, appeals by right the trial court's opinion and order granting the motion for summary disposition by defendant, Home-Owners Insurance Company, and dismissing MEEMIC's claim under MCR 2.116(C)(10). We conclude that the trial court did not err when it determined that—as a matter of law—Home-Owners had no obligation to cover the loss at issue. Accordingly, we affirm.

## I. BASIC FACTS

The facts of this case are undisputed. John Putvin owned several cars, including a 1966 Corvette, which he stored in a commercial storage facility. As a result of his declining health, John Putvin had not driven the Corvette in 2012 or 2013. Catherine Eppard and Kevin Byrnes stored personal property at this same storage facility.

-1-

In April 2013, John Putvin's son, Rick Putvin, and Kip James Cergenul went to the storage facility to perform maintenance on John Putvin's automobiles and prepare them for eventual sale. Rick Putvin and Cergenul were flushing the Corvette's fuel lines when gasoline vapors ignited and caused a fire. The fire destroyed more than $125,000 in personal property that Eppard and Byrnes stored at the facility. MEEMIC insured Eppard and Byrnes against fire losses and compensated them.

In October 2013, MEEMIC, as the subrogee of Eppard and Byrnes, sued Rick Putvin and Cergenul, along with their automobile no-fault insurers, Michigan Millers Mutual Insurance Company and Auto-Owners Insurance Company, to recover its losses. MEEMIC alleged, in relevant part, that Rick Putvin and Cergenul could be held liable for their negligence under Michigan's no-fault act. See MCL 500.3101; MCL 500.3135(3). After Rick Putvin and Cergenul presented evidence that John Putvin had not driven the Corvette in more than one year and had purchased comprehensive coverage for it through State Farm Mutual Auto Insurance Company, which was permitted under MCL 500.3101(1), MEEMIC stipulated to dismiss its claims against Rick Putvin, Cergenul, and their no-fault insurers in January 2014. However, the trial court gave MEEMIC permission to amend its complaint to add a claim against Home-Owners Insurance Company.

In January 2014, MEEMIC filed its first amended complaint. It alleged that Home-Owners issued an automobile no-fault policy to John Putvin, which covered the automobiles that he continued to drive. MEEMIC also alleged that, given that John Putvin was the owner or registrant of the Corvette involved in the fire, Home-Owners was liable to pay property protection insurance benefits for the losses caused by the fire under MCL 500.3121 and MCL 500.3125, even though it did not insure the Corvette.

In February 2014, Home-Owners moved for summary disposition of MEEMIC's claim against it under MCR 2.116(C)(10). Home-Owners argued that, when coverage is not required under Michigan's no-fault act, the terms of the policy control. Inasmuch as it was undisputed that the Corvette did not have to have property protection insurance under Michigan's no-fault act and the policy that Home-Owners issued to John Putvin unambiguously excluded the Corvette from coverage, Home-Owners maintained that it had no obligation to cover the losses arising from the Corvette's maintenance.

The trial court determined that the priority provision stated under MCL 500.3125 did not compel Home-Owners to pay for the loss at issue. The court reasoned that Home-Owners had no statutory obligation to pay for losses involving the Corvette due to the fact that the Legislature authorized insurers to allow owners or registrants of a motor vehicle that is not driven or moved upon a highway to delete the coverage required under the no-fault act and maintain comprehensive coverage. See MCL 500.3101(1). The trial court granted Home-Owners' motion for summary disposition and dismissed MEEMIC's claim on that basis.

MEEMIC now appeals in this Court.

## II. MANDATORY NO-FAULT INSURANCE BENEFITS

### A. STANDARDS OF REVIEW

On appeal, MEEMIC argues that the trial court erred when it determined that Home-Owners could lawfully exclude coverage for unlisted motor vehicles such as the Corvette and granted Home-Owners' motion for summary disposition on that basis. Because MCL 500.3125 unambiguously obligated Home-Owners to cover the loss at issue as an insurer of an owner or registrant of a vehicle involved in the accident, MEEMIC maintains, the trial court should have determined that Home-Owners could not exclude coverage for an unlisted motor vehicle and granted judgment in MEEMIC's favor. This Court reviews de novo a trial court's decision on a motion for summary disposition. *Huntington Nat'l Bank v Daniel J. Aronoff Living Trust*, 305 Mich App 496, 506; 853 NW2d 481 (2014). This Court also reviews de novo whether the trial court properly interpreted and applied the statutory provisions to the facts. *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012).

### B. ANALYSIS

Every "owner or registrant of a motor vehicle required to be registered in this state" must "maintain security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance." MCL 500.3101(1). However, the security "shall only be required to be in effect during the period the motor vehicle is driven or moved upon a highway." *Id.* And, for a motor vehicle that is not driven or moved upon a highway, an insurer "may allow the insured owner or registrant of the motor vehicle to delete a portion of the coverages under the policy and maintain the comprehensive coverage portion of the policy in effect." *Id.*

It was undisputed that John Putvin did not drive or move the Corvette upon a highway during the period at issue. Therefore, he was not required to maintain "security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance" in effect for that time period. MCL 500.3101(1). Instead, he permissibly elected to insure his Corvette with a policy that provided comprehensive coverage alone. See *id.* In addition, consistent with the requirements of MCL 500.3101(1), John Putvin purchased a no-fault policy that included property protection insurance for the motor vehicles that he continued to drive upon a highway.

An insurer who issues a no-fault insurance policy that includes property protection insurance "is liable to pay benefits for accidental damage to tangible property arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle subject to the provisions of this section and . . . [MCL 500.3125.]" MCL 500.3121(1). Under MCL 500.3125, a person who suffers accidental property damage "shall claim property protection insurance benefits" first from "insurers of owners or registrants of vehicles involved in the accident . . . ." MCL 500.3125. This Court has construed other priority provisions within the no-fault act and concluded that language similar to that used in MCL 500.3125, requires an insurer to pay benefits whenever it has issued a no-fault policy to an owner of a vehicle involved in the accident, even if the policy did not specifically include coverage for that vehicle. See *Titan Ins Co v American Country Ins Co*, ___ Mich App ___; ___ NW2d ___ (2015) (Docket Nos. 319342

& 321598) (examining priority under MCL 530.3114); *Farmers Ins Exch v Farm Bureau Ins Co*, 272 Mich App 106, 113-114; 724 NW2d 485 (2006) (interpreting MCL 500.3114[5][a]); *Pioneer State Mut Ins Co v Titan Ins Co*, 252 Mich App 330, 335-336; 652 NW2d 469 (2002) (construing MCL 500.3115[1][a]). For that reason, if we were to construe MCL 500.3125 in the same way, Home-Owners would be an insurer of an owner of a motor vehicle involved in the fire loss. Moreover, assuming that the fire loss arose "out of the ownership, operation, maintenance or use" of the Corvette as "a motor vehicle," MCL 500.3121, MEEMIC—as the subrogee of Eppard and Byrnes—would be entitled to claim property protection insurance benefits from Home-Owners because Home-Owners issued an insurance policy to John Putvin and he was the owner of the Corvette, which was involved in the accident. Nevertheless, even accepting that Home-Owners is the insurer of an owner of a motor vehicle involved in the accident under MCL 500.3125 and would be liable to pay property protection benefits under MCL 500.3121, if the Corvette were required to be insured under MCL 500.3101(1), we conclude that the trial court did not err when it concluded that Home-Owners was not obligated to pay property protection benefits under the specific facts of this case.

Although the Legislature generally required the "owner or registrant of a motor vehicle required to be registered in this state" to maintain security for the payment of property protection insurance benefits, it stated that the security "shall only be *required* to be *in effect* during the period the motor vehicle is driven or moved upon a highway." MCL 500.3101(1) (emphasis added). Because the security is only required to be in effect during those periods, the Legislature authorized insurers to allow their insureds to delete property protection insurance from their no-fault coverage for the period when a motor vehicle that is not driven or moved upon a highway:

> Notwithstanding any other provision in this act, an insurer that has issued an automobile insurance policy on a motor vehicle that is not driven or moved on a highway may allow the insured owner or registrant of the motor vehicle to delete a portion of the coverages under the policy and maintain the comprehensive coverage portion of the policy in effect. [MCL 500.3101(1).]

When construing the no-fault act, this Court must be careful to interpret the words used in the statute in "light of their ordinary meaning and their context within the statute" and must read the various provisions "harmoniously to give effect to the statute as a whole." *Johnson*, 492 Mich at 177 (quotation marks and citation omitted). By authorizing insurers under MCL 500.3101(1) to allow their insureds to "delete" the specified "coverages" and maintain only the "comprehensive coverage portion" of the policy, the Legislature unambiguously expressed its intent to make the specified types of coverage optional for motor vehicles that the insured owns or has registered, but that are not driven or moved upon a highway. Thus, construing MCL 500.3125 in harmony with MCL 500.3101(1), we conclude that an insurer of an owner of a motor vehicle involved in an accident is not statutorily required to pay property protection insurance benefits to a person suffering accidental property damage where the motor vehicle involved in the accident was not driven or moved upon a highway and the owner or registrant elected to forego that coverage in favor of comprehensive coverage, as permitted under MCL

-4-

500.3101(1).[1]  Because the coverage is optional in such cases, whether the policy provides coverage must be determined from the policy itself.[2]  See *Husted v Auto-Owners Ins Co*, 459 Mich 500, 511-512; 591 NW2d 642 (1999) (stating that, where coverage is not mandatory under the no-fault act, the terms of the insurance agreement control whether there is coverage).

In this case, it is undisputed that the Corvette had not been driven or moved upon a highway during the relevant period.  Consequently, John Putvin was not required to maintain security for the payment of benefits under MCL 500.3101(1), and, because he purchased a policy from State Farm insuring the Corvette with comprehensive coverage, Home-Owners could lawfully exclude the Corvette from coverage under the no-fault policy that it issued to him.  See *Husted*, 459 Mich at 516-517.

In its policy, Home-Owners stated that it would pay property protection insurance benefits for accidental damage to tangible personal property, which arises out of the ownership, operation, maintenance, or use of an "insured motor vehicle as a motor vehicle."  It further defined an insured motor vehicle to mean a motor vehicle with respect to which the policy applies and for which a specific premium is charged, or with respect to which John Putvin was "required to maintain security" under MCL 500.3101(1).  John Putvin did not pay a premium for coverage of the Corvette and, as already discussed, he was not required to maintain security for the Corvette under MCL 500.3101(1).  Consequently, under the plain terms of the policy at issue, Home-Owners was not "liable to pay benefits for accidental damage to tangible property" arising out of the ownership, operation, maintenance, or use of John Putvin's Corvette.  MCL 500.3121(1).

The trial court did not err when it granted Home-Owners' motion for summary disposition.

Affirmed.  As the prevailing party, Home-Owners may tax its costs.  MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Christopher M. Murray
/s/ Douglas B. Shapiro

---

[1] Because this case only involves property protection insurance, we express no opinion as to whether the same would be true for claims involving personal protection insurance or residual liability insurance.

[2] If Rick Putvin and Cergenul had driven the Corvette to a different location in order to perform the maintenance that led to the fire, the coverage would no longer have been optional under MCL 500.3101(1).  If that were the case, we would agree that Home-Owners would have had an obligation to pay property protection benefits under MCL 500.3125.