# STATE OF MICHIGAN

# COURT OF APPEALS

TOMMIE MCMULLEN,

      Plaintiff-Appellee,

v

CITIZENS INSURANCE COMPANY and
TRAVELERS INSURANCE COMPANY,

      Defendants,

and

FARMERS INSURANCE EXCHANGE,

      Defendant/Cross-Plaintiff-
      Appellant,

and

MARKEL INSURANCE COMPANY,

      Defendant/Cross-Defendant-
      Appellee.

UNPUBLISHED
June 13, 2017

No. 332373
Washtenaw Circuit Court
LC No. 14-000708-NF

Before: JANSEN, P.J., and MURPHY and BORRELLO, JJ.

PER CURIAM.

Defendant/cross-plaintiff-appellant, Farmers Insurance Exchange (Farmers), appeals as of right the order denying the relief requested in Farmers' motion for reconsideration of the trial court's earlier order granting summary disposition in favor of defendant/cross-defendant-appellee, Markel Insurance Company (Markel), and denying Farmers' motion for summary disposition with regard to its cross-claim against Markel. We reverse and remand.

This case arises from a motor vehicle accident in which plaintiff suffered substantial injuries. Plaintiff was the passenger in a stolen Mercury Sable when the Mercury was involved in a single vehicle accident. A woman named Sara Soenen donated the Mercury to Purple Heart before the accident. KBS Auto Sales (KBS), LLC, an automobile dealership, purchased the Mercury, but did not obtain a new registration for the vehicle. At the time of the accident, KBS maintained a no-fault insurance policy through Markel. Following the accident, Farmers was

-1-

assigned as the insurer of last resort through the Michigan Assigned Claims Plan. It is undisputed that plaintiff was not a named beneficiary under a no-fault policy, and he did not live with any family members who were named beneficiaries under a no-fault insurance policy.

Plaintiff filed the instant action against multiple no-fault insurers, including Markel and Farmers, for personal protection insurance (PIP) benefits. Plaintiff requested that the trial court determine which insurer is responsible for payment of the PIP benefits. Farmers filed a cross-claim against Markel, contending that Markel is the insurer of highest priority. The trial court granted summary disposition in favor of defendants Citizens Insurance Company and Travelers Insurance Company, and the court's decision with regard to these defendants is not challenged on appeal. The court also granted summary disposition in favor of Markel with regard to plaintiff's complaint. Farmers filed a motion for reconsideration, as well as a motion for summary disposition with regard to Farmers' cross-claim. The court denied the relief requested in Farmers' motion for reconsideration and denied Farmers' motion for summary disposition on its cross-claim.

Farmers argues that the trial court erred by granting summary disposition in favor of Markel because Markel was the insurer of higher priority. We agree.

We review for an abuse of discretion the trial court's decision to grant or deny a motion for reconsideration. *D'Alessandro Contracting Group, LLC v Wright*, 308 Mich App 71, 76; 862 NW2d 466 (2014). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Id*. MCR 2.119(F)(3) provides:

> Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted. The moving party must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error.

"[We review] the grant or denial of summary disposition de novo." *Farm Bureau Gen Ins Co v Blue Cross Blue Shield of Mich*, 314 Mich App 12, 19; 884 NW2d 853 (2015). " 'A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint.' " *Id*. (citation omitted). A court properly grants a motion for summary disposition under MCR 2.116(C)(10) when there is no genuine issue of material fact. *Id*. " 'There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party.' " *Id*. (citation omitted).

Finally, to the extent that resolution of this issue involves the proper interpretation of a statute, we review de novo issues of statutory interpretation. *Dell v Citizens Ins Co of America*, 312 Mich App 734, 739; 880 NW2d 280 (2015).

> The primary goal of statutory interpretation is to ascertain the legislative intent that may reasonably be inferred from the statutory language. The first step in that determination is to review the language of the statute itself. Unless statutorily defined, every word or phrase of a statute should be accorded its plain and

-2-

ordinary meaning, taking into account the context in which the words are used. [This Court] may consult dictionary definitions to give words their common and ordinary meaning. When given their common and ordinary meaning, [t]he words of a statute provide the most reliable evidence of its intent . . . . [*Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 515; 821 NW2d 117 (2012) (citation and quotation marks omitted; second alteration in original).]

The issue in this case is whether Markel had priority over Farmers, the insurer of last resort, to pay plaintiff's PIP benefits under the no-fault act, MCL 500.3101 *et seq*. The no-fault act was enacted in order to provide " 'assured, adequate, and prompt recovery for economic loss arising from motor vehicle accidents.' " *Adanalic v Harco Nat'l Ins Co*, 309 Mich App 173, 187; 870 NW2d 731 (2015) (citation omitted). MCL 500.3101 provides, in relevant part, "The owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance." The relevant priority statute, MCL 500.3114, provides the priority order for payment of PIP benefits. The relevant priority section states:

> Except as provided in subsections (1) to (3), a person suffering accidental bodily injury arising from a motor vehicle accident while an occupant of a motor vehicle shall claim personal protection insurance benefits from insurers in the following order of priority:
>
> (a) The insurer of the owner or registrant of the vehicle occupied.
>
> (b) The insurer of the operator of the vehicle occupied. [MCL 500.3114(4).]

Farmers was assigned to plaintiff's claim through the Michigan Assigned Claims Plan and is required to provide PIP benefits to plaintiff if Markel is not obligated to provide PIP benefits to plaintiff. See MCL 500.3172(1). Therefore, the sole question presented in this case is whether Markel is the insurer of highest priority pursuant to MCL 500.3114(4) because Markel insured the owner of the Mercury at the time of the accident.

Farmers argues that Markel is required to provide PIP benefits to plaintiff pursuant to MCL 500.3114(4) because Markel insured the owner of the Mercury. In contrast, Markel argues that the no-fault policy provides that a "covered auto" is one that was "required to have No-Fault benefits in the state where [it is] licensed or principally garaged," and that the Mercury was not "required to be registered" in Michigan because KBS is an automobile dealer. Therefore, according to Markel, KBS was not required to obtain no-fault coverage for the Mercury, and the no-fault policy in place at the time of the accident did not apply to the vehicle.

Farmers relies on *Farmers Ins Exch v Farm Bureau Gen Ins Co of Mich*, 272 Mich App 106; 724 NW2d 485 (2006), in support of its position. In *Farmers*, a motorcyclist was injured when his motorcycle was hit by a van. *Id*. at 108. The van was uninsured at the time of the accident. *Id*. However, one of the two owners of the van maintained a policy of no-fault insurance through the defendant with regard to another vehicle. *Id*. The insurance policy did not list the van as an insured vehicle, and it did not list the other owner of the van as a named

insured. *Id*. The motorcyclist filed a claim for PIP benefits through the Michigan Assigned Claims Plan, formerly known as the Michigan Assigned Claims Facility, which assigned the claim to the plaintiff. *Id*. The plaintiff filed an action for declaratory relief regarding which no-fault insurer was required to pay the PIP benefits. *Id*. The issue in the case was whether the language in MCL 500.3114(5)(a) requires an insurer to pay PIP benefits when that insurer did not issue a policy covering a vehicle involved in the accident. *Id*. at 110.

Although the accident in *Farmers* involved a motorcycle, MCL 500.3114(5)(a), the priority statute at issue in the case, contains relevant language that is identical to the priority statute at issue in this case. MCL 500.3114(5)(a) provides:

> A person suffering accidental bodily injury arising from a motor vehicle accident that shows evidence of the involvement of a motor vehicle while an operator or passenger of a motorcycle shall claim personal protection insurance benefits from insurers in the following order of priority:
>
> (a) *The insurer of the owner or registrant* of the motor vehicle involved in the accident.
>
> (b) The insurer of the operator of the motor vehicle involved in the accident.
>
> (c) The motor vehicle insurer of the operator of the motorcycle involved in the accident.
>
> (d) The motor vehicle insurer of the owner or registrant of the motorcycle involved in the accident. [Emphasis added.]

This Court concluded that the plain language of the statute provided that "the insurer need not insure the vehicle in the accident, but must insure the owner or registrant." *Farmers*, 272 Mich App at 113. Therefore, because the defendant insured one of the owners of the van, the defendant was the first in priority to provide PIP benefits. *Id*. This Court further explained:

> Had the Legislature intended MCL 500.3114(5)(a) only to require an insurer to provide no-fault benefits if the insurer actually insured the motor vehicle involved in the accident, it could have chosen the following language for MCL 500.3114(5) (a): "The insurer of the motor vehicle involved in the accident," deleting the first prepositional phrase, "of the owner or registrant." Clearly, the Legislature did not choose that language, and for us to adopt defendant's position would be to render the phrase "of the owner or registrant" in the statute nugatory. [*Id*. at 113-114.]

This Court further explained that its holding was consistent with a legislative intent to insure persons, rather than vehicles, from loss. *Id*. at 114. This Court quoted an earlier decision of this Court interpreting materially identical language, in which this Court stated, " '[T]he statute does not state that the injured person must seek these benefits *from the insurer of the motor vehicle*.' " *Id*. at 115 (emphasis added; alteration in original), quoting *Pioneer State Mut Ins Co v Titan Ins Co*, 252 Mich App 330, 336; 652 NW2d 469 (2002).

Additionally, Farmers relies, in large part, on this Court's recent decision in *Titan Ins Co v American Country Ins Co*, 312 Mich App 291; 876 NW2d 853 (2015). The *Titan* decision concerned two consolidated cases stemming from motor vehicle accidents involving uninsured drivers. *Id*. at 294-295. In both cases, the vehicles in issue were uninsured, and the operators of the vehicles were not insured under a no-fault policy. *Id*. at 295. However, in both cases, the owners of the vehicles involved in the accidents, Safe Arrival Transportation and Bronco Express Company, maintained policies of no-fault insurance with the defendant covering other vehicles. *Id*. In both cases, the plaintiff was assigned as the insurer of last resort. *Id*. This Court held that because the defendant insured other vehicles owned by Safe Arrival and Bronco Express, the defendant was responsible for the claims under MCL 500.3114(4). *Id*. at 302.

We conclude that *Farmers* and *Titan* stand for the proposition that the no-fault insurer of the owner of the vehicle involved in the accident is the insurer of highest priority under MCL 500.3114(4), regardless of whether the vehicle involved in the accident was covered under the insurance policy. Both opinions reach the conclusion that the insurer of the owner of the vehicle involved in the accident has priority over an assigned insurer, *regardless* of whether the vehicle was insured under the no-fault policy. As this Court indicated in *Farmers*, had the Legislature intended for the focus of the priority language in issue to be on the vehicle, the Legislature would have worded the statute to indicate that the insurer insures the motor vehicle, rather than the owner of the vehicle. *Farmers*, 272 Mich App at 113-114. The parties do not dispute that Markel issued a no-fault insurance policy to KBS that was effective at the time of the accident. Therefore, it is irrelevant whether the Mercury was a "covered auto" as defined in Markel's insurance policy because Markel provided no-fault insurance to KBS at the time of the accident.

Markel contends that the Mercury was required to be registered in Michigan in order for the Markel insurance policy to apply in this case. Markel cites *Parks v Detroit Auto Inter-Ins Exch*, 426 Mich 191; 393 NW2d 833 (1986), in support of its position. In *Parks*, the plaintiff was injured while working inside a trailer owned by his employer. *Id*. at 196. The priority provision at issue in the case stated that "an employee 'who suffers accidental bodily injury while an occupant of a motor vehicle o*wned or registered by the employer*, shall receive personal protection insurance benefits to which the employee is entitled *from the insurer of the furnished vehicle*.' " *Id*., quoting MCL 500.3114(3). The Court concluded that the trailer was not required to be registered in Michigan under MCL 500.3101(1). *Id*. at 200. Therefore, the Court concluded that

> an out-of-state vehicle not required to be registered in Michigan and not operated in this state for more than thirty days is not subject to the security provisions or [MCL 500.3114(3)] of the no-fault act and that when an employee is injured while an occupant of such a vehicle, the employee's personal insurer, if there is one, must pay the employee's personal protection benefits under [MCL 500.3101(1)]. [*Id*.]

*Parks* can be distinguished from this case for several reasons. First, the statutory provision at issue in *Parks* differs from the provision at issue in this case. The priority provision at issue in *Parks* involved an injury suffered by an employee occupying a motor vehicle owned or registered by the employer. *Id*. at 196. Importantly, the language of the statute at issue in *Parks* referred to the insurer of the *vehicle*, rather than the insurer of the *owner* of the vehicle.

*Id*.  Additionally, the plaintiff in *Parks* maintained a policy of no-fault insurance, and a plaintiff's own insurer is generally the no-fault insurer of highest priority.  *Id*. at 197, 202-203.  Therefore, *Parks* differs from the instant case in several key respects.

Importantly, however, our Supreme Court stated in a footnote:

> [W]e assume [MCL 500.3114(4)] does not apply because we read the phrase "owner or registrant of the vehicle occupied" within [MCL 500.3114(4)] to be part of the more complete requirement as stated in [MCL 500.3101(1)]: "The owner or registrant of a motor vehicle *required to be registered in this state*[.]" [*Id*. at 203 n 3.]

We conclude that our Supreme Court's statement in the footnote constituted obiter dictum and did not constitute binding precedent.  See *Auto-Owners Ins Co v Seils*, 310 Mich App 132, 160 n 7; 871 NW2d 530 (2015) ("Obiter dicta are not binding precedent.  Instead, they are statements that are unnecessary to determine the case at hand and, thus, lack the force of an adjudication.") (Citation and quotation marks omitted.)  The Court's discussion in the footnote in *Parks* constituted obiter dictum because it was not necessary to determine the case at hand.  The priority rule outlined in MCL 500.3114(4) was not at issue in *Parks*, and the Court stated that it "assumed" that MCL 500.3114(4) did not apply in the case without directly deciding whether that priority rule had any effect on the case.  *Parks*, 426 Mich at 203 n 3.  Therefore, the Court's statements regarding MCL 500.3114(4) were not necessary to determine the case at hand and, therefore, lacked the force of an adjudication.  See *Seils*, 310 Mich App at 160 n 7.

Markel also cites *MEEMIC Ins Co v Mich Millers Mut Ins*, 313 Mich App 94; 880 NW2d 327 (2015), for the proposition that MCL 500.3114(4) does not apply when the vehicle is exempt from no-fault coverage under MCL 500.3101(1).  In *MEEMIC*, a man named John Putvin owned a 1966 Corvette, which was stored in a commercial storage facility.  *Id*. at 95.  Putvin did not drive the Corvette in the year preceding the incident, but he purchased comprehensive insurance coverage that covered the Corvette.  *Id*. at 96-97.  Two men performed work on the Corvette in the storage facility and caused a fire.  *Id*.  The fire caused damage to the personal property of two other individuals that was stored at the facility.  *Id*. at 97.  The plaintiff, the insurer of two individuals whose property was damaged, sued a variety of insurers to recover its losses.  *Id*.  Ultimately, the plaintiff added Home-Owners Insurance Company (Home-Owners) to the complaint, alleging that Home-Owners issued a no-fault policy to Putvin that covered the automobiles that he continued to drive.  *Id*.

This Court concluded that Putvin was not required to maintain no-fault coverage for the Corvette during the period at issue because he did not drive the Corvette during that time.  *Id*. at 99-100.  The relevant priority provision at issue in the case provides that "a person who suffers accidental property damage 'shall claim property protection insurance benefits' first from 'insurers of owners or registrants of vehicles involved in the accident . . . .' " *Id*. at 100, quoting MCL 500.3125.  This Court concluded:

> Thus, construing MCL 500.3125 in harmony with MCL 500.3101(1), we conclude that an insurer of an owner of a motor vehicle involved in an accident is not statutorily required to pay property protection insurance benefits to a person

suffering accidental property damage if the motor vehicle involved in the accident was not driven or moved upon a highway and the owner or registrant elected to forgo that coverage in favor of comprehensive coverage, as permitted under MCL 500.3101(1). Because the coverage is optional in such cases, whether the policy provides coverage must be determined from the policy itself. [*Id*. at 102 (citation omitted).]

This Court held that because the Corvette was not driven on a highway during the relevant period, Putvin was not required to maintain security for no-fault benefits under MCL 500.3101(1), and that, because Putvin maintained a comprehensive insurance policy, Home-Owners was able to exclude the Corvette from coverage under its no-fault policy. *Id*. at 103. Therefore, Home-Owners was not liable to pay property protection benefits. *Id*. Importantly, however, this Court stated, "Because this case only involves property protection insurance, we express no opinion as to whether the same would be true for claims involving personal protection insurance or residual liability insurance." *Id*. at 102 n 2.

We conclude that *MEEMIC* is distinguishable from the instant case. First, *MEEMIC* involved property protection insurance benefits, and this Court expressly stated that its opinion did not address claims involving PIP benefits. *Id*. at 102 n 2. In addition, the *MEEMIC* case centered around the fact that the Corvette had not been driven or moved on a highway, and the owner of the Corvette had purchased a comprehensive coverage policy covering the vehicle. *Id*. at 102. In this case, the parties do no contest that the Mercury was driven on the street, and neither party asserts that KBS maintained a separate policy covering the vehicle.

However, even assuming that Markel is correct that the Mercury must be registered or required to be registered in Michigan in order for Markel's no-fault policy to apply, we conclude that the Mercury was required to be registered at the time of the accident because it was driven on a street or highway without conforming to the provisions of the Michigan Vehicle Code, MCL 257.1 *et seq*., relating to dealers. [1] Markel points to several registration statutes in support of its position that the vehicle was not required to be registered in Michigan. MCL 257.216 provides, in relevant part:

Every motor vehicle, recreational vehicle, trailer, semitrailer, and pole trailer, when driven or moved on a street or highway, is subject to the registration and certificate of title provisions of this act except the following:

---

[1] We agree with Markel's contention that the Secretary of State Dealer Manual indicating that a dealer must obtain no-fault insurance lacks the force and effect of law. Our Supreme Court has held that the Dealer Manual is not entitled to the force and effect of law because it was not properly promulgated as a rule. *Goins v Greenfield Jeep Eagle, Inc*, 449 Mich 1, 7-10; 534 NW2d 467 (1995). Accordingly, the Dealer Manual is not entitled to deference on the issue whether KBS was required to obtain no-fault coverage for the Mercury. For the same reason, we also agree with Markel that the Secretary of State Dealer Application lacked the force of law.

(a) A vehicle driven or moved on a street or highway *in conformance with the provisions of this act* relating to manufacturers, transporters, *dealers*, or nonresidents. [Emphasis added.]

Thus, under MCL 257.216, if a vehicle is driven on a street or highway in compliance with the provisions of the Michigan Vehicle Code relating to automobile dealers, then the vehicle does not need to be registered. Markel also points to MCL 257.235, which indicates, in relevant part:

If the transferee of a vehicle is a new motor vehicle dealer or a used or secondhand vehicle dealer that acquires the vehicle for resale, *the dealer is not required to obtain a new registration of the vehicle or forward the certificate of title to the secretary of state*, but shall retain and have in the dealer's immediate possession the assigned certificate of title with the odometer information properly completed, except as otherwise provided in [MCL 257.235b]. A dealer shall obtain a certificate of title for a vehicle having a salvage certificate of title before the dealer may operate the vehicle under dealer's license plates. Upon transferring title or interest to another person that is not a dealer, the dealer shall complete an assignment and warranty of title upon the certificate of title, salvage certificate of title, or dealer reassignment of title form and make an application for registration and a new title as provided in [MCL 257.217(4)]. [Emphasis added.]

Further, MCL 257.244(4) provides:

A dealer owning a vehicle of a type *otherwise required to be registered* under this act may operate or move the vehicle upon a street or highway *without registering the vehicle* if the vehicle displays, in the manner prescribed in section 225, 1 special plate issued to the owner by the secretary of state. As used in this subsection, "dealer" includes an employee, servant, or agent of the dealer. [Emphasis added.]

Reading the above statutes *in pari materia*, a dealer does not need to obtain a new registration for a vehicle, but the dealer must display a special dealer plate in order to operate or move the vehicle on the street without a registration. See *Titan Ins Co v State Farm Mut Auto Ins Co*, 296 Mich App 75, 84; 817 NW2d 621 (2012) ("Statutes that relate to the same subject or share a common purpose are *in pari materia* and must be read together as one law, even if they contain no reference to one another and were enacted on different dates.")

In this case, the parties do not dispute that KBS is a dealer under the Michigan Vehicle Code. MCL 257.216 clarifies that a motor vehicle operated on a street by a dealer does not need to be registered under the no-fault act, but only if the vehicle is driven in compliance with the other provisions of the act. The Michigan Vehicle Code also states that a dealer does not need to obtain a new registration for a vehicle. See MCL 257.235. However, MCL 257.244(4) clarifies that a dealer may only operate the vehicle on the street if that vehicle displays a special plate. In this case, the parties do not dispute that the Mercury would have to be registered if KBS did not own the vehicle. Additionally, it is undisputed that the Mercury did not display a special plate at the time of the accident. Therefore, because the dealer was not operating the vehicle on the road

while displaying a special plate, the Mercury was required to be registered at the time of the accident.

Therefore, we conclude that the Mercury constituted a "covered auto" under Markel's insurance policy. Even assuming that Markel is correct that the definition of "covered auto" states that an automobile must be "required to have No-Fault benefits in the state where [it is] licensed or principally garaged," for the reasons discussed, the Mercury was required to have no-fault benefits in Michigan at the time of the accident. Therefore, the Mercury was covered under the no-fault policy. For the reasons discussed, Markel is the insurer of highest priority to provide PIP benefits to plaintiff. We reverse and remand for entry of an order granting summary disposition in favor of Farmers.

Reversed and remanded. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ William B. Murphy
/s/ Stephen L. Borrello