*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NILES JOHNSON,

    Plaintiff,

v

USA UNDERWRITERS,

    Defendant/Cross-Defendant-
    Appellant,

COURTNEY EISEMANN and STEVEN
VANDEINSE,

    Defendants,
and

CITIZENS INSURANCE COMPANY OF
AMERICA,

    Defendant/Cross-Plaintiff/Appellee.

FOR PUBLICATION
May 14, 2019

No. 340323
Washtenaw Circuit Court
LC No. 16-000191-NF

Before: BECKERING, P.J., and RIORDAN and CAMERON, JJ.

BECKERING, P. J. (*dissenting*).

When it comes to car insurance, Michigan is a no-fault state.[1] Every owner of a car required to be registered in Michigan must have certain basic coverages in order to drive their car

---

[1] The Michigan No-Fault Insurance Act became law on October 1, 1973. While it has been a target for certain legislators for years and is currently the subject of much debate and legislative wrangling, our no-fault auto insurance system remains in place.

on a highway. MCL 500.3101(1). Those coverages are personal protection insurance (PIP), property protection insurance (PPI), and residual liability insurance. *Id.* Under Michigan law, only if a car is not going to be driven or moved on a highway may an insurance company issue an insurance policy that *deletes* the above-identified mandatory minimum coverages and maintains the non-mandatory comprehensive portion of the policy in effect. *Id.* Our Supreme Court has expressly stated with clarity this mandate on owners and insurers: "[U]nder the no-fault automobile insurance act, MCL 500.3101 *et seq*, insurance companies are *required* to provide first-party insurance benefits, referred to as personal protection insurance (PIP) benefits, for certain expenses and losses. MCL 500.3107; MCL 500.3108." *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012) (emphasis added); see also *Citizens Ins Co of America v Federated Mut Ins Co*, 448 Mich 225, 230; 531 NW2d 138 (1995) (emphasis added) ("[W]hile subject to certain exceptions not at issue here, the no-fault act *unambiguously requires* that a policy of automobile insurance, sold to a vehicle owner pursuant to the act, *must* provide coverage for residual liability arising from use of the vehicle so insured."); and *Continental Cas Co v Michigan Catastrophic Claims Ass'n*, 874 F Supp 2d 678 (2012) (emphasis added) ("The Michigan No-Fault Insurance Act is unique among no-fault regimes; it provides for unlimited lifetime PIP benefits to accident victims. MCL 500.3101 *et seq*. The unlimited PIP coverage is mandatory for all registered owners of motor vehicles in this state. Therefore, insurance companies writing automobile insurance in Michigan *must* provide unlimited coverage to policy holders.").[2] At its core, this case is about whether an insurance company can sell the non-mandatory portions of a car insurance policy in Michigan and yet not provide any of the mandatory coverages required by Michigan's no fault law.[3] Defendant USA Underwriters (USAU) claims that it can, and the majority agrees. I respectfully dissent.

## I. BASIC FACTS AND PROCEDURAL HISTORY

According to his testimony and the documents produced at defendant Steven Vandeinse's deposition[4], on June 19, 2015, Vandeinse purchased a 2011 Chevrolet Impala from Ypsilanti Import Auto Sales for around $11,000. Before he could take possession of the car, Vandeinse had to get insurance, so he went to LA Insurance. Vandeinse testified that he told the person working there he wanted "full coverage on the vehicle."[5] He was charged $445.03 up front and

---

[2] Although federal court of appeals decisions are not binding, we may find their analyses and conclusions to be persuasive. *Abela v General Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

[3] Defendant USA Underwriters admitted at oral argument that none of the car insurance policies it sells in Michigan provide any of the basic coverages required by Michigan law pursuant to MCL 500.3101(1). So if you buy car insurance from USA Underwriters, you still can't legally drive your car.

[4] Although not yet a party at the time, USAU was notified of Vandeinse's deposition, but did not attend.

[5] As noted by the majority, the person who worked with Vandeinse at LA Insurance wrote an affidavit for purposes of this litigation indicating that the insurance policy Vandeinse actually bought is exactly what he asked for, and that he chose to forgo buying no-fault compliant

agreed to ongoing monthly payments to USAU of approximately $145. Vandeinse was given a "Certificate of Insurance" issued by USAU, which looks like the verification document drivers are required to present to the Secretary of State's Office in order to prove they have no-fault coverage so they can register their car:

| Certificate of Insurance | |
|---|---|
| This insurance is physical damage only, coverage does not meet the requirements of the Michigan No-fault Act, Chapter 31 of the Michigan Insurance Code. Involved in an Accident? Call (855) 230-1656 | This insurance is physical damage only, coverage does not meet the requirements of the Michigan No-fault Act, Chapter 31 of the Michigan Insurance Code. Involved in an Accident? Call (855) 230-1656 |
| Named Insured: STEVEN VANDEINSE    Policy #: USAUW-00002968-00 | Named Insured: STEVEN VANDEINSE    Policy #: USAUW-00002968-00 |
| Effective Date: 6/19/2015 5:34:13 PM - Expiration Date: 12/19/2015 12:01 AM | Effective Date: 6/19/2015 5:34:13 PM - Expiration Date: 12/19/2015 12:01 AM |
| Insurance Company:    USA Underwriters PO Box 2910 Rancho Cordova, CA 95741-2910 NAIC Code: 30457 | Insurance Company:    USA Underwriters PO Box 2910 Rancho Cordova, CA 95741-2910 NAIC Code: 30457 |
| Year/Make/Model    Vehicle Identification Number 2011 Chevrolet IMPALA LT    2G1WB5EKXB1330594 | Year/Make/Model    Vehicle Identification Number 2011 Chevrolet IMPALA LT    2G1WB5EKXB1330594 |
| Customer Service Assistance: (855 230-1656 | Customer Service Assistance: (855) 230-1656 |

While it states in small print that the insurance "is physical damage only, coverage does not meet the requirements of the Michigan No-Fault Act, Chapter 31 of the Michigan Insurance Code," it also immediately thereafter states in bold: "**Involved in an Accident? Call (855) 230-1656)**." Vandeinse was also handed a one page document titled "Loss Payable Endorsement" issued by USAU. It indicated that he was being charged $600 for "Comprehensive" and $600 for "Collision" insurance.[6] His policy was effective from June 19, 2015 to December 19, 2015. That equates to $1,200 every six months, or $2,400 per year in premiums for a 2011 Chevy Impala.

Based on other documents produced in this litigation, it appears that LA Insurance[7] sold Vandeinse a comprehensive and collision only policy issued by USAU, as described above, and

---

insurance. USAU also produced a type-written application, purportedly initialed by Vandeinse, identifying what he was actually getting in terms of coverage. Whether Vandeinse or instead the agent is telling the truth about how the transaction was actually handled remains a matter of dispute. But it is not material to the legal issue of whether USAU can sell a car insurance policy covering comprehensive and collision coverage, for a car that is going to be driven or moved on a highway in Michigan, but that does not comply with MCL 500.3101(1). Importantly, USAU was made well aware of the fact that the car would be driven or moved on the highway because it sold Vandeinse collision insurance.

[6] The document does not indicate that this coverage fails to meet the requirements of Michigan's no-fault law.

[7] According to testimony provided by Hani Kassab, Jr., part owner of USAU and a franchise of LA Insurance, Anthony Yousif owns and is the president and CEO of LA Insurance. According to documents submitted by USAU to the Department of Insurance and Financial Services, Yousif

an Automobile Service Contract, issued by NSD, covering roadside assistance for $300. In other words, Vandeinse walked away with just about everything but mandatory no-fault coverage. None of what he was sold allowed him to operate or move his car on a Michigan highway.

Vandeinse returned to Ypsilanti Import Auto Sales with his documents, where they completed and he signed an "Application for Michigan Title & Registration, Statement of Vehicle Sale," which documented that Vandeinse had obtained insurance through USAU, Policy No. USAUW-00002968-00. Vandeinse received a temporary registration number.

On July 7, 2015, the State of Michigan issued a Certificate of Title recognizing Vandeinse as the lawfully registered owner of the Impala. Vandeinse testified that he dutifully paid USAU $145 per month on the insurance premium.

On September 8, 2015, Vandeinse's girlfriend, Courtney Eismann, was driving the Impala with permission when she accidentally struck and injured bicyclist plaintiff, Niles Johnson. After the accident, the responding police officer documented that the Impala was insured through USAU.

Johnson initially filed a claim with, and later a lawsuit against, the Michigan Automobile Insurance Placement Facility (MAIPF), which led to defendant/cross-plaintiff/appellee Citizens Insurance Company of America receiving the claim by assignment. But after the depositions Vandeinse and Eismann, Niles added USAU to the instant lawsuit. Ultimately, the trial court concluded that USAU had issued a policy in violation of Michigan law because it failed to provide the requisite no-fault insurance coverage required by MCL 500.3101. And apparently based on USAU's issuance of a "Certificate of Insurance" that looked just like that commonly used to register a vehicle with the Secretary of State's Office (which did, in fact, fool both the Secretary of State's office and a police officer), the court concluded that USAU acted with an intent to deceive the consumer and the Secretary of State. Thus, it ordered reformation of the contract to provide PIP, PPI, and residual liability insurance, as required by the no-fault act. USAU appeals by right.

## II. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition, *MEEMIC Ins Co v Michigan Millers Mut Ins*, 313 Mich App 94; 880 NW2d 327 (2015), the proper interpretation of a statute, *McCormick v Carrier*, 487 Mich 180; 795 NW2d 517 (2010), and a trial court's decision to grant equitable relief, *Corwin v DaimlerChrysler Ins Co*, 296 Mich App 242, 253; 819 NW2d 68 (2012).

## III. MANDATORY MICHIGAN NO-FAULT INSURANCE

On appeal, USAU contends that the trial court erred in reforming Vandeinse's automobile insurance policy because the plain language of the insurance application and disclosures purportedly signed by Vandeinse indicated that the policy did not include no-fault coverage. I would conclude that the trial court did not err because USAU issued an automobile insurance policy in violation of the mandatory coverage requirements of the no-fault act, and

---

is also the primary shareholder in USAU. At the time of Kassab's 2017 deposition, USAU had been operating around four years, having purchased Southern Michigan Insurance Company.

thus, it must be interpreted to include the statutorily required minimum coverage in order to comply with Michigan law.

"An insurer who elects to provide automobile insurance is liable to pay no-fault benefits subject to the provisions of the [no-fault] act. *Dobbleare v Auto-Owners Ins* Co, 275 Mich App 527, 530; 740 NW2d 503 (2007), citing MCL 500.3105(1). "When construing the no-fault act, this Court must be careful to interpret the words used in the statute in light of their ordinary meaning and their context within the statute and must read the various provisions harmoniously to give effect to the statute as a whole." *MEEMIC Ins Co*, 313 Mich App at 102 (internal quotation marks and citation omitted). It has long been held that the no-fault insurance act is remedial in nature and must be liberally construed in favor of persons it is intended to benefit. *In re Geror*, 286 Mich App 132, 134; 779 NW2d 316 (2009) (internal quotation marks and citation omitted).

MCL 500.3101(1) of the no-fault act, regarding motor vehicle security agreements, provides:

> The owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance. Security is only required to be in effect during the period the motor vehicle is driven or moved on a highway. Notwithstanding any other provision in this act*, an insurer* that has issued *an automobile insurance policy* on a motor vehicle *that is not driven or moved on a highway* may allow the insured owner or registrant of the motor vehicle to *delete a portion* of the coverages under the policy *and maintain the comprehensive coverage portion* of the policy in effect [emphasis added].

MCL 500.3101(2)(a) defines "automobile insurance" as meaning "that term as defined in [MCL 500.]2102." MCL 500.2102 broadly defines "automobile insurance" to include insurance "customarily known as comprehensive and collision." MCL 500.2102(2)(c). Thus, a comprehensive and collision insurance policy is an "an automobile insurance policy" as described in MCL 500.3101(1).[8] Reading the plain language in the third sentence of MCL 500.3101(1), *an insurer* may only *delete* the statutorily mandated coverage from an automobile insurance policy and *maintain* the comprehensive coverage *portion* under one condition. In other words, an automobile insurance policy *starts* with the mandatory coverages, because the word "delete" necessarily means initial inclusion. An insurer may only *delete* those mandatory coverages *if* the motor vehicle is not driven or moved on a highway. I interpret MCL 500.3101(1) of the no-fault act to mean that an insurer may not sell an automobile insurance policy in Michigan—including the one in question—without covering the statutorily required

---

[8] Similarly, MCL 500.3206, which pertains to cancellation of automobile liability policies, defines "policy of automobile insurance" as used in that chapter to mean "a policy insuring private passenger automobiles . . . or that portion of a combination policy which insures private passenger automobiles." Put simply, an "automobile liability policy" and a policy insuring private passenger automobiles is one and the same thing.

minimum coverages, absent circumstances not present here (i.e. for a car that is not going to be driven or moved on a highway).[9]

My interpretation of MCL 500.3101(1) is further bolstered by MCL 500.3009, regarding casualty insurance contracts for automobiles:

> An automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for property damage, bodily injury, or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall not be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless the liability coverage is subject to all of the following limits:
>
> (a)  A limit, exclusive of interest and costs, of not less than $20,000.00 because of bodily injury to or death of 1 person in any 1 accident.
>
> (b)  Subject to the limit for 1 person in subdivision (a), a limit of not less than $40,000 because of bodily injury or death of 2 or more persons in any 1 accident.
>
> (c)  A limit of not less than $10,000 because of injury to or destruction of property of others in any accident.
>
> ***
>
> (4)  If an insurer *deletes* coverage from an *automobile insurance policy* pursuant to section [MCL 500.]3101, the insurer shall send documentary evidence of the deletion to the insured [emphasis added].

MCL 500.3101(1) and MCL 500.3009(4) both broadly address "automobile insurance policies" and under what circumstances an insurer may *delete* the requisite statutory minimum coverages from an automobile insurance policy.  MCL 500.3101 and MCL 500.3009(4) implicitly require every automobile insurance policy in Michigan to contain the requisite minimum no-fault coverage at the outset, whereafter optional, or non-mandatory, coverage may be added to that policy, "the rights and limitations of [which] are purely contractual and are construed without reference to the no-fault act." *Rory v Continental Ins Co*, 473 Mich 457, 465-466; 703 NW2d 23 (2005).[10]  See also *Krohn v Home-Owners Ins Co*, 490 Mich 145, 155 n 17; 802 NW2d 281 (2011) (emphasis added) ("[A]ll owners or registrants of automobiles in Michigan are free to

---

[9] As noted above, it cannot be disputed that USAU knew the Impala Vandeinse was seeking to insure would be operated on the highway because it sold him collision insurance.

[10] Optional coverages the parties may agree to add to the automobile insurance policy include collision and comprehensive insurance, residual liability coverage in excess of the statutory minimum, uninsured/underinsured coverage, and mini tort coverage.  However, the fundamental and unavoidable starting point for insurers offering automobile insurance policies to owners and registrants of automobiles in the Michigan marketplace is a policy that provides the statutorily required minimum coverages under our no-fault law.

purchase insurance contracts that provide *greater* coverage than the *minimum* required under the no-fault act.").

More explicitly, MCL 500.3131, pertaining to residual liability insurance, provides that "[t]his section shall apply to *all* insurance contracts in force as of October 1, 1973, or entered into after that date." MCL 500.3131(2) (emphasis added). Thus, the no-fault laws make clear that automobile insurance policies in Michigan must include at least the minimum no-fault coverages identified in MCL 500.3101(1), with those coverages being deletable only if the "motor vehicle is not driven or moved on a highway," and additional non-mandatory coverages can be added to the policy as agreed upon by the parties. Further exemplifying this statutory scheme, optional collision coverage is addressed in MCL 500.3037, and provides in pertinent part:

(1) At the time a new applicant for the insurance required by section [MCL 500.]3101 for a private passenger nonfleet automobile makes an initial written application to the insurer, an insurer shall offer both of the following coverages to the applicant:

(a) Limited collision coverage, which must pay for collision damage to the insured vehicle without a deductible amount if the operator of the vehicle is not substantially at fault in the accident from which the damage arose.

(b) Broad form collision coverage, which must pay for collision damage to the insured vehicle regardless of fault, with deductibles in the amounts as approved by the director, which deductibles must be waived if the operator of the vehicle is not substantially at fault in the accident from which the damage arose.

(2) In addition to the coverages offered under subsection (1), standard and limited collision coverage may be offered with deductibles as approved by the director.

(3) An insurer may limit collision coverage offered under this section as provided in [MCL 500.]3017.

***

(7) At least annually in conjunction with the renewal of a private passenger nonfleet *automobile insurance policy*, or at the time of an addition, deletion, or substitution of a vehicle under an existing policy, other than a group policy, an insurer shall inform the policyholder, on a form approved by the director, all of the following:

(a) The current status of collision coverage, if any, for the vehicle or vehicles affected by the renewal or change and the rights of the insured under the current coverage if the vehicle is damaged.

(b) The collision coverages available under the policy and the rights of the insured under each collision option if the vehicle is damages.

(c) Procedures for the policyholder to follow if he or she wishes to change the current collision coverage. [Emphasis Added.]

As manifested by MCL 500.3037, the starting point in Michigan is an automobile insurance policy that covers the mandatory minimum insurance required by MCL 500.3101. The new applicant can then decide whether to *add* collision coverage to the policy at that time or a later time in the life of the policy. Nowhere in the no-fault act does it say that insurance companies can sell automobile insurance policies to Michigan automobile owners that do not provide the mandatory minimum no-fault coverage. To do so would be a violation of the clear purpose of the no-fault act and a consequent violation of public policy. USAU—which bills itself as carrying "*Affordable Car Insurance*" and offering "*terrific rates on quality coverage from top-rated insurance carriers*" to "*drivers*" allowing them "*affordable ways to stay on the road and within the law,*" according to usaunderwriters.com—sold an automobile insurance policy to Vandeinse that would not even allow him to drive his car off the lot.

USAU has conceded that none of the automobile insurance policies it sells in Michigan provide the statutorily mandated minimum coverages for PIP, PPI, and residual liability. Thus, instead of starting with an automobile policy that meets the requirements of Michigan's no-fault act, MCL 500.3101(1), and deleting or adding coverages as permitted by law, see e.g., MCL 500.3037(1), *Krohn*, 490 Mich at 155 n 17, USAU bypasses the no-fault act by underwriting optional insurance only. An insurer who sells automobile insurance in the Michigan marketplace must abide by the no-fault act. See *Citizens*, 448 Mich at 231-232. Based on the foregoing interpretation of the applicable statutes and caselaw, I would conclude that USAU sold an automobile insurance policy to Vandeinse in violation of Michigan's no-fault law and its clearly stated public policy. Accordingly, the trial court did not err in reforming the contract to include the statutorily required minimum no-fault coverage required by MCL 500.3101. See *Citizens*, 448 Mich at 234.

My colleagues in the majority opinion note that the financial responsibility act "permits insureds to fulfill their insurance needs by way of multiple policies through more than one carrier." However, as our Supreme Court indicated in *Citizens*, the financial responsibility act should not be construed to contradict the no-fault act.

At issue in *Citizens* was the "validity of a vehicle owner's policy of liability insurance that denies coverage to any permissive user who is otherwise insured for an amount equal to that specified by the no-fault act." *Citizens*, 448 Mich at 227. Federated Insurance Company's policy provided the mandated residual liability coverages to permissive drivers of the insured car only if the drivers were uninsured or underinsured, while denying such coverages under all other circumstances. *Id*. at 231. The Supreme Court held that an insurer may not lawfully deny residual liability coverages for losses arising from use of a covered vehicle "because the no-fault act clearly directs that a policy sold pursuant to the act must provide residual liability coverage for use of the vehicle insured." *Id*. Of significance to the case at bar, the Supreme Court addressed and dismissed an argument similar to that made in the instant case by USAU:

> Notwithstanding the no-fault act, Federated urges us to focus on the financial responsibility act and contends that the exclusion of coverage contained in its policy is "authorized and contemplated by the financial responsibility act. In particular, Federated relies on subsections (i) and (j) of the financial responsibility act, MCL 257.520[], which provide:

(i) Any motor vehicle liability policy may provide for the prorating of the insurance thereunder with other valid and collectible insurance.

(j) The requirements for a motor vehicle liability policy may be fulfilled by the policies of 1 or more insurance carriers which policies together meet such requirements.

According to Federated, because in each of these cases the driver's insurance policy, when taken together with Federated's insurance policy, will afford benefits of an amount specified by law, its insurance policy complies with public policy evidenced by the financial responsibility act. We question the premise of Federated's argument because it suggests that the financial responsibility act manifests the controlling public policy of this state concerning automobile insurance.

> *The no-fault act, as opposed to the financial responsibility act, is the most recent expression of this state's public policy concerning motor vehicle liability insurance.* Therefore, while Federated's policy might well be reconciled with the financial responsibility act*, its failure to comply with the no-fault act nevertheless renders it violative of public policy. An insurance policy that is repugnant to the clear directive of the no-fault act cannot otherwise be justified by the financial responsibility act.* [*Id*. at 231-232 (emphasis added).]

The financial responsibility act, particularly MCL 257.502(i) and (j), does "provide a method by which an owner may allocate insurance costs among various policies" or by which "various owners may satisfy the insurance obligations created by the no-fault act." *Id*. at 232.

> *However, neither subsection (i) nor subsection (j) of the financial responsibility act permits an insurer . . . to circumscribe the coverage directed by the no-fault act*; to reach that conclusion would not accord proper deference to the policy judgment implicit in the Legislature's decision to require *owners* and registrants of motor vehicles to obtain insurance for the residual liability arising from the *use* of their vehicles. See MCL 500.3101. [*Id*. at 232-233 (emphasis added).]

Thus, while it is incumbent upon owners and registrants to obtain the statutorily mandated insurance, insurers cannot "circumscribe the coverage directed by the no-fault act." *Id*. at 233. The Supreme Court held that the vehicle owner's policy was invalid because it denied coverage for liability arising from the use of an insured vehicle, in contravention of the no-fault act, and it deemed the policy to provide primary coverage in an amount equal to that required by the no-fault act. *Id*. at 227. *Citizens* stands for the proposition that the financial responsibility act does not articulate Michigan's public policy with regard to motor vehicle insurance or absolve insurers of the requirement to conform to the mandates of the no-fault act.

As further support for their conclusion that selling automobile insurance policies in Michigan that do not provide the mandatory minimum coverages set forth in MCL 500.3101 is not violative of the no-fault act, my colleagues in the majority rely on this Court's decision in

*Integral Ins Co v Maersk Container Serv Co, Inc*, 206 Mich App 325; 520 NW2d 656 (1994). *Integral*, however, does not support the majority's position.

*Integral* involved a priority dispute between insurers to determine which was liable to pay PIP benefits for injuries suffered by Ralph Scott when the Michigan-registered tractor truck Scott was driving, and the semitrailer the tractor was pulling, overturned in Pennsylvania. Scott owned the tractor, but he had leased it to Maersk for 90 days. *Id*., 206 Mich App at 328. Maersk had agreed to obtain and maintain liability insurance covering bodily injury and property damage for the tractor. And Scott, who drove the tractor for Maersk, had agreed to obtain "bobtail" insurance[11] and worker's compensation insurance. Accordingly, Maersk obtained from Insurance Company of North America (INA) a policy "covering personal injury protection for automobiles subject to no-fault[,]" that also covered the tractor, and Scott obtained a bobtail policy from Integral Insurance Company. The bobtail policy "expressly excluded coverage (1) while the tractor was being used to carry property for business and (2) while the tractor was being used for the business of anyone who leased the tractor." *Id*. at 328.

Scott was hauling a trailer loaded with cargo for Maersk at the time of the accident. Thus, one of the issues in the trial court was which insurer was first in priority for payment of PIP benefits: INA under the policy sold to Maersk or Integral under the bobtail policy sold to Scott. Scott also filed a worker's compensation claim, and the hearing referee ruled that he was an employee of Maersk. *Id*. at 330. Based on this ruling, the trial court concluded that Maersk's insurer, INA, was first in priority for PIP benefits under MCL 500.3114(3), and entered a corresponding order. Subsequently, however, the Worker's Compensation Appellate Commission revered the hearing referee's determination. *Id*. Thus, by the time the appeals and cross appeals from the trial court's order had reached this Court, the basis of the court's decision no longer existed. Nevertheless, this Court affirmed the trial court's order, but on different grounds. The Court affirmed that INA was first in priority on the ground that Scott had been hauling a trailer with cargo for Maersk at the time of the accident, and the bobtail policy validly excluded coverage under such circumstances. *Id*. at 329-330, 332.

The majority finds *Integral*'s relevance to the instant case in the Court's discussion of the validity of the bobtail policy's exclusions. The trial court ruled that the exclusions were void as against public policy, but this Court disagreed, observing that:

> Integral's policy provided coverage only when Scott was not hauling cargo for a business or when Scott was not hauling cargo for a business to whom the tractor was rented. Admittedly, the policy itself does not provide full coverage. However, the tractor was fully covered under no-fault by the addition of INA's policy that provided coverage when Scott was hauling cargo on behalf of Maersk. [*Id*. at 331.]

The Court supported its reasoning by noting that MCL 257.502(j), found in the Financial Responsibility Act, MCL 257.501 *et seq*., provides, "[t]he requirements for a motor vehicle liability policy may be fulfilled by the policies of 1 or more insurance carriers which policies together meet such requirements." *Integral*, 206 Mich App at 331. The Court then determined

---

[11] "Generally, a 'bobtail' policy is a policy that insures the tractor and driver of a rig when it is operated without cargo or a trailer. *Id*. at 331.

that, "[t]aken together, the policy issued by INA and the bobtail policy issued by Integral provided continuous insurance coverage to the tractor as required by the motor vehicle financial responsibility act" *Id*. at 331-332.

The majority interprets the Court's observation that the bobtail policy did not provide "full coverage" but that the tractor was "fully covered under no-fault by the addition of INA's policy" as indicating that the bobtail policy did not provide for the PIP benefits mandated under MCL 500.3101(1). This interpretation is incorrect. That the bobtail policy provided PIP benefits is evident from this Court's characterization of *Integral* as "a dispute between no-fault insurers" and from the fact that "Integral and INA each agreed to contribute fifty percent of Scott's personal protection insurance (PIP) benefits during their dispute regarding priority." *Integral*, 206 Mich App at 328. Note that the dispute between the insurers was about priority, not liability. Accordingly, the Court's observation that the bobtail policy plus Maersk's policy from INA provided "full coverage" was not an observation about *what* each policy covered, but about *when* the policies were in force. Both policies provided PIP benefits, but at different times. The bobtail policy excluded coverage when the tractor was hauling a load or was rented for business, and INA's policy provided coverage during the period of Maersk's rental; together, the two policies provided "*continuous* insurance coverage to the tractor." *Id*. at 332 (Emphasis added). Thus, *Integral* is not about combining policies that do not cover PIP benefits with those that do to obtain "full coverage," but about combining policies—each of which provides the statutorily mandated PIP coverages—to achieve temporally "continuous insurance coverage" as permitted by the financial responsibilities act.

In sum, the caselaw relied upon by the majority does not support its conclusion that the no-fault act allows an insurance company providing automobile insurance in Michigan to circumvent the no-fault act and sell only optional insurance coverages. The statutory scheme is clear: the starting point for achieving the goals of the no-fault act is an automobile insurance policy that provides the statutorily mandated coverages pursuant to MCL 500.3101(1), to which the parties may add elective coverages as agreed upon, and to delete the mandatory coverages and maintain comprehensive coverage only if the car is not going to be driven or moved on a highway. Automobile policies underwritten by USAU do not comply with the no-fault act. As such, I would affirm the ruling of the trial court.


/s/ Jane M. Beckering